UNITED STATES, Appellee

v.

Michael D. HILL, Seaman Apprentice
U.S. Coast Guard, Appellant

No. 95–1136.
Crim.App. No. 1026.

U.S. Court of Appeals for
the Armed Forces.

Argued June 4, 1996.

Decided Sept. 30, 1996.

For Appellant: *Lieutenant Commander Allen Lotz* (argued).

For Appellee: *Lieutenant Commander Brian F. Binney* (argued).

FLAUM, Circuit Judge: *

This appeal presents a comprehensive challenge to the practice of court-martial members asking questions of witnesses during trial, at least to the extent that the quantity and quality of the questions in the current case allegedly reflect a lack of impartiality. *See generally United States v. Dotson*, 21 USCMA 79, 44 CMR 133 (1971). Appellant alleges that the military judge in this case failed to properly circumscribe the range of the members' exercise of that practice. Finally, appellant claims that the military judge abused her discretion in denying the defense's mid-trial challenge for cause against the president of the court-martial, whose questioning of witnesses, the defense argued, demonstrated his bias against appellant. In all respects, we now hold against appellant.

I

A general court-martial composed of officer members tried Hill on a variety of charges and specifications. Hill pleaded guilty to larceny of a box of condoms valued at about $6.00 and wrongful appropriation of binoculars valued at about $250.00, *see* Art. 121, Uniform Code of Military Justice, 10 USC § 921. Conviction of the condom theft

was entered upon his provident plea; after the prosecution elected to pursue the charged larceny of the binoculars rather than accept his guilty plea to the lesser offense of wrongful appropriation, he was also convicted of that larceny.

Hill pleaded not guilty to all of the remaining charges and specifications. After a trial, the members acquitted him of willfully and wrongfully damaging a privately owned automobile; larceny of a car stereo and five compact discs; larceny of a pair of jeans; wrongful receipt of stolen body armor, wet suit pants, and binoculars; and indecent acts. *See* Arts. 109, 121, and 134, UCMJ, 10 USC §§ 909, 921, and 934, respectively. However, the members convicted him of larceny of military property of the United States of a value of about $350.00, wet suit pants of some value, and a pair of binoculars of some value; wrongful appropriation of a night vision device valued at about $3,000.00, which was military property of the United States; wrongful receipt of a stolen car stereo; and knowing possession of a pistol with an obliterated serial number that had been transported in interstate commerce, in violation of 18 USC § 922(k). *See* Arts. 121 and 134.

Subsequently, the convening authority approved these results and the court-martial's adjudged sentence of a bad-conduct discharge, confinement for one year, total forfeitures, and reduction to the lowest enlisted grade. In due course, the Court of Criminal Appeals affirmed. 42 MJ 725 (1995).

In her preliminary instructions to the members, before any evidence had been presented, the military judge instructed as follows relevant to member questioning:

> In weighing the evidence, only matters properly before the court as a whole may be considered, but each of you are expected to utilize your common sense and your knowledge of human nature in evaluating the evidence. Each counsel will have a full opportunity to conduct a complete examination of each witness, who may be called to testify. In that regard the *trial counsel*

---

* Judge Joel Flaum of the United States Court of Appeals for the 7th Circuit, sitting by designation

pursuant to Article 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

*and defense counsel have the primary re-sponsibilities for developing the evidence in the case. You should be prepared to listen to both counsel and depend on them to bring out the facts in the case, but when both counsel have finished their question-ing if you feel there are still substantial questions that should be asked you will be given the opportunity to do so.* The way we handle that is to require you to write out the question on a form that you have there. That method gives counsel for both sides, the accused, and myself an opportu-nity to review the question before it's asked, since your questions like questions by counsel are subject to objection on proper grounds. Don't allow any other member on the panel to see your question. Whether or not your question is asked it will be attached to the record as an appel-late exhibit. *There are a couple of things to keep in mind with regard to your ques-tioning. First, you can't attempt to help either the government or defense by your questions.* Second, counsel have usually interviewed the witnesses and know more about the case than we do and often don't ask what may appear to be an obvious question because they are aware that this particular witness has no knowledge on that subject. *But with those caveats in mind please feel free to ask any questions that remain after both counsel have fin-ished their questioning.*

(Emphasis added.)

The record reflects that the members sub-sequently took up with gusto the military judge's invitation to "feel free to ask" ques-tions. Appellant represents, and the Govern-ment does not contradict, that "the members submitted approximately 125 member ques-tion forms posing questions for witnesses, many of which had multiple questions on them. Most of these questions (approxi-mately 110) were proposed during the find-ings portions of the trial." Final Brief at 3. Of these 125 question forms, the president of the court, Commander (Cdr) Newell, submit-ted 53.

Neither counsel objected to the military judge's earlier-quoted instruction or request-ed any addition to or modification of it. Moreover, while counsel objected to certain individual questions, neither counsel objected to the members' activity level in general or requested of the military judge any relief from it of any sort. Finally, neither counsel ever argued to the military judge, via a mo-tion for mistrial or any other vehicle, that the quantity and/or quality of the questions posed by the panel as a whole amounted to a deviation from its required neutral role in the trial. In other words, with a single excep-tion, counsel's objections focused only on par-ticular *questions* and not on the *members* or any individual member.

That single exception concerned Cdr New-ell. At the end of the testimony of Seaman DeBari, a shipmate friend of Hill, who had been called as a defense witness, Cdr Newell proffered questions that would have asked the witness whether he and Hill were mem-bers of a shipboard "gang" and whether they were "bound by some type of code of honor." In an out-of-court session under Article 39(a), UCMJ, 10 USC § 839(a), defense counsel vigorously objected to these questions, and trial counsel joined in asking the military judge not to pose them to the witness.

Additionally, defense counsel "challenge[d] Cdr Newell for cause and ask[ed] that he be removed from the panel on the grounds that indications are that he cannot be an impartial factfinder." Counsel argued:

> Making a logical leap from an acknowl-edged friendship testified to, not only by Seaman DeBari, but a bunch of people including Government witness Chief Grant, that the three men, Seaman Hill, Seaman Perry, and Seaman DeBari were friends— making that leap from that to a gang is improper and indicates to this defense counsel, that the frame of mind of that particular member, Commander Newell, is such that he is unwilling to accept testimo-ny regarding that relationship. That he has set in his mind, at least a possibility, that has not been brought up in evidence, that there was a gang involved.

Trial counsel resisted this challenge against Cdr Newell, and in the end the mili-tary judge denied it. She reasoned that the

questions really were directed at probing the witness' credibility. While she agreed that the phrasing of the questions were such that they should not be asked, she saw nothing in those questions or in the others that Cdr Newell had submitted that "indicat[ed] a bias on his part."

## II

Article 46, UCMJ, 10 USC § 846, affords the court-martial "equal opportunity [with trial counsel and defense counsel] to obtain witnesses and other evidence in accordance with such regulations as the President may prescribe." This statutory empowerment of lay factfinders in the military justice system to be active trial participants as a matter of right is unique among federal criminal courts. *See* Annotation, *Jurors Questioning Witnesses in Federal Court*, 80 A.L.R. Fed. 892; Drafters' Analysis, Mil.R.Evid. 614, Manual for Courts–Martial, United States (1995 ed.) at A22–47; *compare* Mil.R.Evid. 614 *with* Fed.R.Evid. 614.

Article 46 is implemented by the President through several provisions of the Manual. RCM 703(a), Manual, *supra*, for instance, essentially reiterates the statute's language regarding the members' "equal opportunity to obtain witnesses and evidence." RCM 801(c) does similarly but also adds: "The right of the members to have additional evidence obtained is subject to an interlocutory ruling by the military judge." Finally, Mil. R.Evid. 614(a) and (b) authorize the military judge, "at the request of the members," to "call witnesses" and to "interrogate witnesses, whether called by the military judge, the members, or a party."

Of course, it is imperative that members, as the triers of fact, remain impartial and not form early opinions or prematurely jump to *de facto* deliberations via their interaction with witnesses. *United States v. Pratt*, 15 USCMA 558, 36 CMR 56 (1965); *see also United States v. Ajmal*, 67 F.3d 12 (2d Cir. 1995); *United States v. Bush*, 47 F.3d 511 (2d Cir.1995); *United States v. Karnes*, 531 F.2d 214 (4th Cir.1976). The Discussion following RCM 801(c) admonishes: "In taking such evidence, the court-martial must not

depart from an impartial role." This Court some years ago expressed its view that "it is important for the military judge to preliminarily instruct the members in some manner as to the nature of this questioning process and to closely monitor its occurrence." *United States v. Lamela*, 7 MJ 277, 279 (CMA 1979). Along the same line, the authors of the Military Rules of Evidence Manual caution:

> Before the trial judge examines a witness or permits the members to examine a witness, he should determine whether that witness's testimony needs clarification or completion. If the bench believes it does, questioning should be conducted with the greatest restraint.

> \*   \*   \*

> The problem is more complex when the members themselves call or interrogate witnesses. Careful counsel and trial judges must ensure that the members' efforts do not become partisan. Instructions reminding the members of their role in the proceedings may be appropriate here.

S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 709–10 (3d ed. 1991).

■ In this case, as already pointed out, the military judge did instruct the members at the outset that, generally, they were to leave development of the evidence to the parties but that they could ask any "substantial questions" that remained when the parties were finished with a witness. Mil. R.Evid. 614 permits a military judge to determine whether it is "appropriate" to call a witness that the members want to hear and to determine the "propriety of the questions" submitted to a witness by members, not merely to consider whether questions are objectionable under the rules of evidence. This language provides a military judge with the necessary tools to keep the members' exercise of their statutory powers from endangering the fairness of the trial. *See also* RCM 802(c) (members' search for evidence subject to interlocutory ruling by military judge).

■ We underscore that it is always advisable for the military judge to be vigilant in ensuring that counsel, and not the court members, remain primarily responsible for developing evidence relevant to the case. Although the military judge in this case choose not to exercise her broad authority to restrict extensive questioning by members, the precise issue before us is not whether the members here were less restrained than they might have been. Rather, it is whether the members or any one of them—Cdr Newell, in particular—while enjoying the relatively free rein permitted them by the military judge regarding questions, departed from their required objective role as factfinders.

■ We have observed that, "under certain conditions, the sheer number of questions by a court member may highlight his bias against an accused or be an important factor in determining the existence of partiality in a member as to a particular issue in dispute." *United States v. Lamela, supra* at 279. At the same time, we have made clear that, while this may be a factor in the evaluation, the real inquiry is a more holistic one—whether "the overall questioning by these members creates an impression or a substantial doubt that [they] had departed from [their] required character as ... unbiased member[s] of the court ..." *Id.* at 280. *See* RCM 912(f)(1)(N) (member excused to keep proceedings "free from substantial doubt as to ... impartiality"); *see also United States v. Dock,* 40 MJ 112, 128 (CMA 1994)(finding military judge who extensively questioned witnesses to be impartial).

■ In this context, we agree with the conclusion contained in the well-reasoned opinion of the Court of Criminal Appeals that, while "there was an exceptionally large number of questions from the court members," the number of questions "alone" is insufficient "to reflect a lack of impartiality" in this case. 42 MJ at 727. Indeed, the questions reflect that the members were thoroughly immersed in this trial and attentive to the testimony and to the issues that they needed to resolve. Further, their findings imply that they cut with precision through all the evidence and the numerous

charges and specifications in front of them, acquitting appellant of fully half of the contested allegations. Moreover, the sentence that they imposed surely cannot be viewed fairly as approaching harsh.

■ While the members were more aggressive in pursuit of evidence than usually is the case, being extremely active does not equate to being biased. As counsel for the Government before this Court has put it, "Court-martial members need not be inert to be impartial." We are not unmindful, in this connection, that the defense never objected to the activity level generally nor raised any question whether the panel as a whole, by their numerous inquiries, had departed from their required neutrality. While we choose not to invoke forfeiture from this lack of objection, *but see* Mil.R.Evid. 103; *United States v. Prevatte,* 40 MJ 396, 397 (CMA 1994), we do infer that the omission suggests that the defense believed as we now hold: The members remained impartial, notwithstanding their zealous participation in the search for evidence.

Similarly, we conclude that the military judge did not abuse her discretion in denying the mid-trial challenge for cause against Cdr Newell. *See generally United States v. McLaren,* 38 MJ 112, 118 (CMA 1993)(ruling on challenge for cause reviewed for abuse of discretion). RCM 912(f)(1)(N) prescribes that a member shall be excused whenever it appears that he or she "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "The burden of establishing that grounds for a challenge exist is upon the party making the challenge." RCM 912(f)(3).

■ In ruling on appellant's challenge to Cdr Newell, the military judge expressly considered not only the questions that immediately precipitated the defense motion but also contemplated the full gamut of questions asked by this member. In this rather unusual case of a mid-trial challenge, the military judge was well-positioned to evaluate all of the subtleties of Cdr Newell's performance as a court member, and she concluded that she had not "seen anything to indicate" a lack of impar-

tiality. Moreover, she recalled that Cdr Newell had affirmatively indicated that he could follow the instructions of the military judge; she was therefore confident that he would disregard any of his proposed questions that she did not submit to the witnesses.

After independently reviewing the questions posed by Cdr Newell, we conclude that the military judge did not abuse her discretion in refusing to disqualify him as a member. We agree with the military judge's finding that Cdr Newell's gang-related questions about gang-related activity did not indicate bias, but rather objectively attempted to explore the credibility of Seaman DeBari. Although these questions may have been improper under the Military Rules of Evidence, they simply do not reflect the absence of impartiality on the part of Cdr Newell. Moreover, our review of Cdr Newell's questioning as a whole leads to the inescapable conclusion that this member maintained his required role as a neutral and unbiased factfinder. We therefore hold that the military judge did not abuse her discretion in ruling that appellant did not carry his burden of establishing an adequate ground for challenge against Cdr Newell.

### III

The decision of the United States Coast Guard Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and GIERKE concur.