# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
SIMS, COOK, and GALLAGHER,
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 ROBERT A. LYON**
**United States Army, Appellant**

ARMY 20090792

Headquarters, United States Army Alaska
Michael J. Hargis and Donna M. Wright, Military Judges
Lieutenant Colonel John T. Rawcliffe, Acting Staff Judge Advocate

For Appellant: Captain Richard M. Gallagher, JA (argued); Colonel Mark Tellitocci, JA; Lieutenant Colonel Jonathan F. Potter, JA; Major Laura R. Kesler, JA; Captain E. Patrick Gilman, JA (on brief).

For Appellee: Captain Edward J. Whitford, JA (argued); Major Amber J. Williams, JA; Major Sara M. Root, JA; Captain Christopher L. Simons, JA (on brief).


28 February 2012

------------------------------------------------------------------
MEMORANDUM OPINION ON FURTHER REVIEW
------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Per Curiam:

A military judge, sitting as a general court-martial, convicted appellant, contrary to his pleas, of two specifications of aggravated sexual assault of a child who had attained the age of twelve years but had not attained the age of sixteen years, one specification of sodomy, two specifications of willful disobedience of a superior commissioned officer, one specification of wearing unauthorized insignia, one specification of wrongful appropriation of a military motor vehicle, and one specification of failing to go to his place of duty, in violation of Articles 86, 90, 120, 121, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 890, 920, 921, 925, and 934 [hereinafter UCMJ].

The military judge sentenced appellant to a bad-conduct discharge, confinement for three years, and reduction to Private E-1. The convening authority reduced the amount of confinement to two years and six months and otherwise

approved the adjudged sentence. The convening authority also credited appellant with forty-nine days of confinement credit against the sentence to confinement.

On 8 August 2011, this court issued a memorandum opinion which affirmed the findings and sentence in this case. On 11 January 2012, our superior court vacated our decision and returned the record of trial to The Judge Advocate General of the Army for remand to this court for consideration in light of *United States v. Fosler*, 70 M.J. 225 (C.A.A.F. 2011). Consequently, appellant's case is once again before this court for review under Article 66, UCMJ, 10 U.S.C. § 866 [hereinafter UCMJ].

In addition to our review of this case in light of *Fosler*, we have also reviewed appellant's two assignments of error. The first alleges that the military judge abandoned her impartial role and became an advocate for the prosecution; the second asserts the approved sentence is disproportionate and inappropriately severe. We find that these assignments of error lack merit, but agree with the opinion of Judge Borgerding and our predecessor panel (as set out immediately below) that the first assignment of error requires some discussion:

## BACKGROUND

Appellant and K.A. began a sexual relationship in late December 2008 (after meeting on "MySpace") that continued until early February 2009. At all times during this relationship, K.A. was fifteen years old and appellant was nineteen years old. Appellant's knowledge of K.A.'s actual age was the primary point of litigation at the trial.

Appellant cites myriad reasons why he believes the military judge abandoned her impartial role during his trial. In general, he argues the military judge became an advocate for the prosecution when she asked numerous questions of the trial witnesses, including appellant, and when she treated appellant's testimony with "disbelief" and "incredulity." We disagree.

## LAW AND DISCUSSION

"A military judge's impartiality is crucial to the conduct of a legal and fair court-martial." *United States v. Foster*, 64 M.J. 331, 332 (C.A.A.F. 2007) (citing *United States v. Quintanilla*, 56 M.J. 37, 43 (C.A.A.F. 2001)). The military judge may be an active participant in the proceedings, but must take care not to become an advocate for either party. *Foster*, 64 M.J. at 332-333 (citing *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995)). Nevertheless, "[t]here is a strong presumption that a military judge is impartial in the conduct of judicial

proceedings." *Foster*, 64 M.J. at 333 (citing *Quintanilla,* 56 M.J. at 44).

The test on appeal when a military judge's impartiality is questioned is "whether, 'taken as a whole in the context of this trial,' a court-martial's 'legality, fairness, and impartiality' were put into doubt by the military judge's questions." *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000) (quoting *Ramos*, 42 M.J. at 396). This is an objective test, judged from the viewpoint of a reasonable person observing the proceedings. *Id.*

The military judge took an active role in this court-martial, but she was within her discretion in doing so. *United States v. Hill*, 45 M.J. 245, 249 (C.A.A.F. 1996) ("[B]eing extremely active does not equate to being biased."). A military judge has "wide latitude" to call and ask questions of witnesses. *United States v. Acosta*, 49 M.J. 14, 17 (C.A.A.F. 1998). *See also* UCMJ art. 46 (affords "equal opportunity" to trial counsel, defense counsel, *and the court-martial* to "obtain witnesses and other evidence in accordance with such regulations as the President may prescribe") (emphasis added); Military Rule of Evidence 614 (A military judge may "interrogate witnesses, whether called by the military judge, the members, or a party."). Of course, such questioning should not be conducted in a manner that causes the military judge to appear partisan in the case. *Acosta*, 49 M.J. at 17. "It is the tenor of the military judge's questions, rather than their sheer number, that is a significant factor in determining whether the judge abandoned [her] impartial role." *United States v. Johnson*, 36 M.J. 862, 867 (A.C.M.R. 1993) (citing *United States v. Shackelford*, 2 M.J. 17, 19 (C.M.A. 1976)).

During the trial, the testimony elicited during direct and cross-examinations was, at times, unclear or incomplete. The military judge evenly elicited clarifying facts from witnesses called by both the government and the defense to ensure that she, as the fact finder, understood the facts of the case. A military judge "can and sometimes must ask questions in order to clear up uncertainties in the evidence or to develop the facts further." *Ramos*, 42 M.J. at 396 (citations omitted). The military judge in this case did nothing more than this. Overall, we find the military judge maintained her "fulcrum position of impartiality" and her questions of the witnesses, including appellant, "did not suggest any judicial preference or belief." *Acosta*, 49 M.J. at 18.

Moreover, trial defense counsel never objected to any of the military judge's questions; he neither requested that the military judge

3

recuse herself, nor did he request a mistrial.  At no point during the trial did trial defense counsel make any comment or complaint as to the military judge's tone or treatment of the parties.  Significantly, after the military judge finished her questioning of appellant, trial defense counsel rested his case without an attempt to rehabilitate his client.  Even if the defense failure to object at trial was a strategic attempt to avoid further perceived ire from the military judge, we note that trial defense counsel also failed to challenge the impartiality of the military judge in his post-trial clemency matters.  We will infer from this lack of complaint that the defense believed the military judge remained impartial at trial.  *Burton*, 52 M.J. at 226 (citing *Hill*, 45 M.J. at 249).

Appellant also alleges the military judge treated trial defense counsel with "disdain."  We disagree.  The military judge was equally abrupt with both trial and defense counsel.  For example, at one point in the trial, the military judge sharply told trial counsel "you are not getting these documents in" as counsel was attempting to offer some counseling statements during sentencing.  Further, several of appellant's examples of purported "disdain" toward the defense team were simply rulings adverse to the defense.  In addition, appellant complains that when trial defense counsel called appellant to the stand, the military judge stated "so you really don't want to do that," as if to suggest counsel was a "fool."  This is a mischaracterization of the military judge's words.  When viewed in context, we find that the military judge was trying to accommodate the defense by allowing a recess to avoid calling appellant out of order when the first defense witness was not present in the courtroom.  The full exchange is as follows:

> MJ:  Fine.  Do you have another witness you can call, in the meantime?
>
> DC: The---Private Lyon, Your Honor.
>
> MJ: So you really don't want to do that?
>     (Pause.)
>
> MJ:  Well, I mean, it's up----
>
> DC:  We'd rather wait.
>
> MJ: ---it's up to you.  Do you want to take a recess and wait for this guy?  I mean----

DC:  Yes, ma'am.

MJ:  All right.  Fine.  He works on post.  Right?

ATC: Yes, Your Honor, he does.

MJ:  Okay.  Well, let's try to get him here, as soon as possible.

ATC:  Yes, ma'am.

MJ:  All right.  Court's in recess.

Abrupt comments from a military judge do not necessarily impact the fairness of the trial, especially when they are intended to exercise control over the proceedings.  *See United States v. Reynolds*, 24 M.J. 261, 264 (C.M.A. 1987).  *See also Foster*, 64 M.J. at 339.

We are satisfied that "taken as a whole in the context of this trial," the military judge's actions did not "raise substantial doubt" as to the court-martial's "legality, fairness, and impartiality." *Reynolds*, 24 M.J at 265.  We are also satisfied that a reasonable person viewing the trial would not have had any doubts about the fairness of the trial. *Ramos*, 42 M.J. at 396.[*]

### *Fosler* Issue

We have also considered and find, in light of our superior court's decision in *Fosler*, that the Article 134, UCMJ, charge and its specification are not so defective as to warrant dismissal in this case.  Although appellant contested his guilt, he did not object to the language of The Specification of Charge IV, which specification did not expressly allege the terminal elements of wrongful wearing of an unauthorized insignia, decoration, badge, ribbon, device, or lapel button.  "[A] charge and specification challenged for the first time on appeal is liberally construed

---

[*] We also disagree with appellant's misplaced assertion that the military judge "felt the need to justify her holding" by announcing an "unreasonable," "unsupported by the record," and "unnecessary" special finding of fact.  After announcing her findings, the military judge quite properly noted that she found the government had disproved appellant's affirmative defense beyond a reasonable doubt.  *See* UCMJ art. 120(t)(16).  This special finding is especially helpful to this court in light of the recent decisions by the Court of Appeals for the Armed Forces in *United States v. Prather*, 69 M.J. 338 (C.A.A.F. 2011) and *United States v. Medina*, 69 M.J. 462 (C.A.A.F. 2011).

and will not be held invalid absent a clear showing of substantial prejudice to the accused-such as a showing that the indictment is so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." *United States v. Roberts*, 70 M.J. 550, 553 (Army Ct. Crim. App. 2011) (quoting *United States v. Watkins*, 21 M.J. 208, 209-210 (C.M.A. 1986)(internal quotations omitted)); *cf. Fosler*, 70 M.J. at 230. Facially, the language of The Specification of Charge IV in this case, combined with the charge, a violation of Article 134, UCMJ, necessarily implies service-discrediting conduct by alleging appellant wrongfully wore an unauthorized Ranger tab on his military uniform. This textual relationship, when liberally construed, establishes that appellant was on notice of the charge and specification against him and the factual allegations within the specification, along with the record of trial, sufficiently protect him against double jeopardy.

## CONCLUSION

On consideration of the entire record, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings and sentence are AFFIRMED.

FOR THE COURT:

JOANNE P. TETREAULT ELDRIDGE
Deputy Clerk of Court