# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Sergeant First Class ROBERT L. WORSHAM**
**United States Army, Appellant**

ARMY 20180552

Headquarters, U.S. Army Cyber Center of Excellence and Fort Gordon
David H. Robertson, Military Judge
Colonel John M. McCabe, Staff Judge Advocate

For Appellant: William E. Cassara, Esquire (argued); Captain Steven J. Dray, JA; William E. Cassara, Esquire (on brief and reply brief).

For Appellee: Captain Karey B. Marren, JA (argued); Lieutenant Colonel Wayne H. Williams, JA; Major Craig J. Schapira, JA; Captain Karey B. Marren, JA (on brief).

4 September 2020

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SALUSSOLIA, Judge:

Appellant asserts the military judge, sitting as a general court-martial, abandoned his impartial judicial role when he recalled two witnesses and called an additional witness in the midst of deliberations.[1] Appellant also claims his defense counsel were ineffective by failing to object to this decision by the military judge

---

[1] The military judge convicted appellant, contrary to his pleas, of six specifications of sexual assault upon a child in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge and confinement for twelve years.

and in failing to object to the military judge's questioning of these witnesses. These issues warrant discussion, but no relief.[2]

This case is before us for review under Article 66, UCMJ.

## BACKGROUND

The offenses in this case involve appellant's stepdaughter, NAG, and incidents that occurred at or near Fort Gordon on various occasions from September 2008 through February of 2010, when NAG was between the ages of 10 and 12. At the time of offenses, NAG lived with appellant, her mother, her brother, NG, and two half-siblings who suffered from autism.

The case turned wholly on the credibility of the witnesses called by the government and the defense, as the government presented no physical evidence corroborating the assaults on NAG. The government called three witnesses during its case in chief, NAG, NT, and BW; defense counsel called two witnesses, SW, NAG's mother, and BM, a family friend.

NAG testified the initial assault (Specification 1 of The Charge) occurred in the living room of their home. The next two assaults (Specifications 2 and 3 of The Charge) occurred in the dining room, after NAG asked for assistance with her homework. The final three incidents (Specifications 4-6 of The Charge) occurred in NAG's bedroom. In each of these three instances, appellant entered NAG's

---

[2] Appellant also asserts: the military judge erred in admitting uncharged misconduct under Military Rule of Evidence [Mil. R. Evid.] 414; and, the evidence is legally and factually insufficient to support the Charge and its Specifications. After giving full and fair consideration of these claims, we find they lack merit.

As to the former claim, the military judge issued a written ruling explaining his decision to admit testimony of appellant's daughter, BW. Having reviewed the military judge's findings of fact and conclusions of law, we find the decision to admit this evidence was not arbitrary, fanciful, clearly unreasonable or clearly erroneous. *See United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013) (citation omitted).

Appellant's later claim, although styled as one of legal and factual insufficiency, is, when read, solely one of factual sufficiency of the evidence. Having weighed the evidence of record, accounting for the fact that we did not observe the witnesses, we are convinced of appellant's guilt beyond a reasonable doubt. *See United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

bedroom, closed and locked the door, and proceeded to sexually assault NAG.[3] NAG testified she revealed the abuse to her mother, SW, in the presence of her brother, NG, when she was 14 years old.

NT, NAG's friend, testified NAG revealed to her the abuse when they were in high school.

The government closed its case with the testimony of appellant's daughter, BW, who provided testimony admitted under Military Rule of Evidence [Mil. R. Evid.] 414 that appellant abused her when she was 8 years old, in a manner similar to the abuse of NAG charged in Specifications 4-6 of the Charge.

The defense's case consisted of two witnesses, NAG's mother and appellant's spouse, SW, and a neighbor, BM. SW testified NAG was eighteen when she first claimed appellant had sexually assaulted her. She denied NAG made an earlier outcry about the abuse. SW and BM both testified that NAG had a poor character for truthfulness.

Following argument by counsel, the military judge closed the court for the day and began deliberations. The following morning, the military judge reopened the court and informed the parties he would recall BW and NAG, and call NG, who had observed portions of the trial but had not been previously called as a witness. Neither the prosecution nor the defense objected.

## LAW AND DISCUSSION

### A. Calling Witnesses in the Middle of Deliberations

Appellant claims the military judge, in recalling NAG and BW, and calling NG for the first time, after beginning deliberations, abandoned his neutral and impartial role "to re-try the government's case," or at least such would appear to a reasonable observer.

"When an appellant, as in this case, does not raise the issue of disqualification until appeal, we examine the claim under the plain error standard of review." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (citing *United States v. Jones*, 55 M.J. 317, 320 (C.A.A.F. 2001)). "Plain error occurs when (1) there is error, (2)

---

[3] Although we have read the record and are familiar with the details surrounding each offense, we need not recite those details again here in order to resolve this case.

the error is plain or obvious, and (3) the error results in material prejudice." *Id.* (citing *United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008)).

"An accused has a constitutional right to an impartial judge." *Martinez*, 70 M.J. at 157 (citing *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001)) Rule for Courts-Martial [R.C.M.] 902 recognizes two bases for disqualification of a military judge, the first being R.C.M. 902(a) which provides that a military judge "shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned."[4]

"There is a strong presumption that a military judge is impartial in the conduct of judicial proceedings." *United States v. Foster*, 64 M.J. 331, 333 (C.A.A.F. 2007) (citing *United States v. Quantanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001)). "'[W]hen a military judge's impartiality is challenged on appeal, the test is whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt' by the military judge's actions." *Martinez*, 70 M.J. 158-59 (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)). This test is an objective one, and asks if the military judge's conduct "would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned." *Id.* (quoting *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982)). The test applies, as here, when the challenge to the military judge's impartiality stems from questions posed to witnesses. *See United States v. Acosta*, 49 M.J. 14, 17-18 (C.A.A.F. 1998). In applying this test, we prospectively review the questioning of the witnesses by the military judge. *United States v. Dock*, 40 M.J. 112, 128 (C.M.A. 1994).

As an initial matter, we find that the military judge did not err merely by pausing his deliberations to hear additional testimony from NAG and BW, or by calling NG.[5] Article 46, UCMJ, and Mil. R. Evid. 614, provide a military judge, sitting as a court-martial, wide latitude in calling or recalling witnesses. This includes calling a witness not called by either the prosecution or defense. *See* R.C.M. 801(c). This also includes reopening the case during deliberation in order to obtain additional evidence. *See* R.C.M 921(b).

---

[4] The other basis, R.C.M. 902(b) provides several specific grounds requiring disqualification of a military judge, none of which are at issue in this case.

[5] Based upon the briefs and presentation at oral argument, neither the government nor appellant dispute the military judge's authority to interrupt his deliberations to either recall or call these witnesses.

The issue for appellant is the manner in which the military judge questioned these witnesses. Appellant asserts the military judge effectively took up the mantle of the prosecution in questioning NAG and BW, and then by calling NG to the stand. We disagree.

"A military judge 'can and sometimes must ask questions in order to clear up uncertainties in the evidence or to develop facts further.'" *United States v. Foster*, 64 M.J. 331, 336 (C.A.A.F. 2007) (quoting *United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995)). Military Rule of Evidence 614 does not limit the military judge as to the number or type of questions, nor does it restrict the military judge "from asking questions which might adversely affect one party or another." *Acosta*, 49 M.J. at 18. This case rested solely on the credibility of NAG and the other witnesses called by the government and defense. The military judge's questions of all three witnesses sought to test the credibility of these witnesses.

### 1. NAG and BW

The responses by NAG and BW as to the appellant's assaults largely mirrored the testimony they provided earlier in the trial, albeit with greater detail elicited by the military judge. We need not engage in a line-by-line comparison of the respective testimony of these witnesses to make the observation that the thrust of the military judge's more detailed questioning was to test their biases and credibility. Viewing these questions prospectively, we see no bias or slant in the manner of the military judge's questions or the questions themselves. As the trier of fact, the military judge was appropriately discharging his duties in making a reasoned determination whether or not appellant was guilty of these offenses. Given this responsibility, when viewed objectively, a reasonable person knowing all of the circumstances – including the ability of the military judge to recall or call witnesses – would understand the military judge was doing just that.

An issue raised by appellant, however, warrants mention. In his briefs and during argument, counsel for appellant asserts that the military judge elicited "human lie detector" testimony from BW and NAG. We disagree.

On recall, the military judge engaged in a colloquy with BW concerning the details of the sexual assault admitted under Mil. R. Evid. 414. BW testified that she immediately reported the abuse to her mother, which then prompted a report to law enforcement. BW testified that she later recanted her story and claimed it was a dream because she did not want to see appellant go to jail. The allegation against appellant was never pursued. Eventually, appellant and BW's mother divorced. The military judge questioned BW as to conversations she later had with her mother about the abuse, to include revealing to her mother that the incident was in fact not a

dream. When asked by the military judge whether her mother accepted as true the abuse allegation, BW replied "Yes."[6]

NAG testified on recall concerning her attempt to tell her natural father, EG, what appellant had done to her. This conversation occurred after NAG reported appellant's abuse to the Army Criminal Investigation Command and moved in with EG. When asked by the military judge about the substance of the conversation, NAG replied "He didn't want to talk about it . . . [t]hinking about it sent him into an anger that he was afraid he couldn't control, that's what he told me."

We view neither line of questioning by the military judge as "human lie detector" testimony. Our Superior Court has described such testimony as "an opinion as to whether the person was truthful in making a specific statement regarding a fact at issue in the case." *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (quoting *United States v. Brooks*, 64 M.J. 325, 328 (C.A.A.F. 2007)). "[T]estimony may still be excluded as the functional equivalent of human lie detector testimony where 'the substance of the testimony leads the members to infer that the witness believes the victim is truthful or deceitful with respect to an issue at trial.'" *United States v. Lopez*, 76 M.J. 151, 155 (C.A.A.F. 2017) (quoting *United States v. Martin*, 75 M.J. 321, 324 (C.A.A.F. 2016)).

We do not find the military judge elicited "human lie detector" testimony from BW or NAG. The military judge was not obtaining testimony from a witness as to whether they believed BW's or NAG's allegations. Further, appellant fails to cite to any case, nor has our research revealed any, where a witness, vouching for his or her own credibility by testifying that others believed him or her constituted

---

[6] Appellant also takes issue with the military judge eliciting evidence of other acts in questioning BW. Specifically, the military judge asked BW if there were any other incidents with appellant other than that described during her initial testimony and on recall. BW indicated appellant never touched her in the same manner, but on one occasion in her adolescence appellant pinched her breast and told her to put on a training bra. The military judge did not pursue this matter further and defense did not object.

To the extent the military judge elicited uncharged misconduct, we find no prejudice. As the military judge amply demonstrated in his written Mil. R. Evid. 414 ruling concerning BW's assault allegations, he understood the parameters of prior acts that could be considered in his role as the factfinder under that rule.

prohibited human lie detector testimony. Rather, the military judge, in context, was testing the biases and credibility of these two witnesses.[7]

### 2. NG

Although NG was on both the government's and defense's witness list, neither side called him to testify during its case-in-chief.[8] The military judge, aware that NG was present for the proceedings and had witnessed NAG's testimony on recall, called NG to answer specific questions concerning NAG's revelation about appellant's sexual abuse.

The military judge posed a limited series of questions related to NG's knowledge of NAG's outcry in the presence of her mother that occurred years earlier. NG denied any knowledge of such an outcry or having discussed the allegations with anybody. On cross-examination by defense counsel, NG claimed NAG first revealed the alleged abuse to him when she was eighteen years old, adding that NAG had a poor character for truthfulness.

Trial counsel then conducted an extended cross-examination of NG that disclosed NG and his fiancé lived with appellant and relied upon appellant for room and board. The trial counsel then cross-examined NG over a recorded telephone conversation with NAG wherein, among other things, NG revealed the many difficulties they were facing in the household, presumably because of the court-martial, and possibility of the family losing everything. NG also acknowledged telling NAG that appellant was remorseful. Following trial counsel's examination, the military judge asked some clarifying questions and then asked NG about the apparent discrepancy between his earlier testimony denying he had spoken with anybody about NAG's claims and the recorded telephone conversation in which NG admitted speaking to appellant about the allegations. NG, though acknowledging his voice on the recording, claimed the recording was false.

---

[7] Even if we did find BW and NAG provided "human lie detector" testimony, we would test such for plain error, as defense at trial did not object. *Knapp*, 73 M.J. at 36 (citation omitted). Even assuming error, appellant has failed to demonstrate to us how this testimony had an unfairly prejudicial impact on the military judge's deliberations. *Id.* at 37 (citations omitted).

[8] We ordered affidavits from appellant's trial defense counsel to address, *inter alia*, whether defense counsel included NG on their witness list and, if so, why he was not called in the defense case-in-chief. In these affidavits, defense counsel detail the significant risks in calling NG that weighed against calling him as a witness, some of which materialized during the government's cross-examination of NG.

Again viewing the military judge's questions prospectively, we can not see how an objective, reasonable observer to these proceedings would find the military judge's questions unfair or smacked of bias. The military judge, as the fact finder, had before him conflicting testimony between NAG and SW concerning NAG's outcry over appellant's abuse. NAG claimed NG was present when this occurred; SW denied the event ever occurred. Calling NG was a logical move to determine the truth. As became evident, NG had significant motives to misrepresent the facts and came across as unbelievable. However, nothing in the record suggests the military judge knew or could have known of such motives before calling NG to the stand. The mere fact that NG's testimony did not apparently work to appellant's favor alone is not a basis to find the military judge lacked impartiality.

In summary, an objectively reasonable observer aware of all the relevant facts and circumstances concerning the military judge's decision to recall NAG and BW, and call NG, would harbor no questions about the impartiality of the military judge or the fairness of the proceedings. Accordingly, we find no error, plain or otherwise, in the military judge's decision to interrupt deliberations to call these witnesses.

### 3. Liljeberg Analysis

Even if we had found the military judge should have been disqualified under R.C.M. 902(a), appellant is not entitled to relief. We come to this conclusion after applying the three-part test set forth in *Liljeberg v. Health Servs. Acquisition Corp.*, for determining whether a judgement should be vacated based upon the appearance of partiality by the military judge: "[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." 486 U.S. 847, 862 (1988). Our analysis here is limited to the first and third of these factors.[9]

As to the first factor, we find no merit in appellant's claims, largely for reasons already stated. The military judge properly exercised his discretion in recalling NAG and BW and calling NG. What appellant would label as "human lie detector" testimony was nothing more than the military judge's exploration of the witness's bias. As for NG, the military judge's questions were limited in scope and intent upon exploring a key fact in the case: whether NAG made an outcry to SW in the presence of NG. That the government conducted a withering cross-examination of NG was neither at the encouragement of the military judge nor is there any

---

[9] Both appellant and the government agree the second factor is not at issue in this case.

evidence to suggest such was the intent of the military judge in calling NG as a witness.

As for the third factor, we consider whether denying appellant relief under the circumstances of this case will risk "undermining the public's confidence in the military justice system." *Martinez*, 70 M.J. at 159 (quoting *Liljeberg*, 487 U.S. at 862). In conducting this analysis we apply "an objective standard similar to the standard applied in the initial R.C.M. 902(a) analysis." *Id.* at 159-60. However, "[i]n the remedy analysis, we do not limit our review to facts relevant to recusal, but rather review the entire proceedings, to include any post-trial proceedings, the convening authority action, the action of the Court of Criminal Appeals, or other facts relevant to the *Liljeberg* test." *Id.* at 160.

Here, we again do not find the military judge's action in calling witnesses during the deliberations, the manner in which the military judge questioned those witnesses, or the questions themselves risks undermining the public's confidence in the military justice system. As noted earlier, the military judge acted within his discretion to call these witnesses. The manner in which the military judge questioned these witnesses, the number of questions asked, and the questions asked did not paint the military judge as a partisan or an adjunct to the prosecution team. Simply, in our view, the military judge was giving due diligence to his role as the fact finder in determining the believability of witnesses in a case that rested entirely on the very credibility of those witnesses in assessing appellant's guilt. During oral argument, appellant was hard pressed to identify the moment at which the military judge crossed the line with his questioning, but instead argued a holistic review led appellant to the inevitable conclusion of "You know it when you see it."[10] We disagree and viewing the case in its entirety, we do not see the military judge's action risked undermining the confidence in the military justice process and, accordingly, find no basis for relief under *Liljeberg*.

## B. Ineffective Assistance of Counsel

Appellant alleges his counsel were ineffective by "[failing] to object when the military judge re-tried the government's case-in-chief" and by "[failing] to call GM to testify about NAG's door not having a lock." We find both allegations meritless.

---

[10] An apparent reference to one Justice's attempt to divine what constitutes hard core pornography not protected from punishment under the First and Fourteenth Amendments. *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J. concurring) ("I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that.")

We review claims of ineffective of counsel de novo. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted). "In assessing the effectiveness of counsel we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)." *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011). To establish ineffective assistance of counsel, the *Strickland* standard requires appellant to demonstrate "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland*, 466 U.S. at 687). This Court applies a three-part test to determine whether the presumption of competence has been overcome:

> 1. Are the allegations true, and, if so, is there any reasonable explanation for counsel's actions?
>
> 2. If the allegations are true, did counsel's performance fall measurably below expected standards?
>
> 3. Is there a reasonable probability that, absent the errors, there would have been a different outcome?

*United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991) (internal citations omitted). There is no need for the court to address both deficiency and prejudice if an appellant makes an insufficient showing on either one. *Strickland*, 466 U.S. at 697.

Regarding counsel's failure to object when the military judge recalled NAG and BW and called NG, we find no deficiency in performance. For the reasons noted above, the military judge's action in recalling and/or calling NAG, BW, and NG was neither improper nor contrary to law or regulation. Rather, the opposite is true. The military judge was well within his authority to call the three witnesses at issue. Further, a review of the record reveals that the military judge maintained his neutrality and impartiality throughout the questioning of all three witnesses. Finding no error or impropriety by the military judge's actions, we are at a loss to find what objection appellant could have lodged that would have compelled the military judge to change course or that would have prevented the recalling or calling of three relevant witnesses.

Regarding the failure "to call GM to testify about NAG's door not having a lock," assuming without deciding deficiency, appellant has failed to establish prejudice, that is, "a reasonable probability that, absent the errors, there would have been a different outcome." Had GM, a friend of appellant, testified in accordance with appellant's proffer, that "NAG's door [did not have] a lock," that testimony

10

would arguably have served two limited purposes. First, it tends to contradict a mere ancillary fact brought out by NAG during her testimony regarding the three incidents in her bedroom. Second, it goes to NAG's overall credibility, something defense counsel aggressively pursued throughout the trial. Regarding NAG's overall credibility, the defense elicited from three witnesses that NAG was untruthful. NAG's mother, SW, when asked if she believed her daughter was truthful responded, "no." NG, NAG's brother, testified that "[NAG] is not a truthful person." GM, the witness at issue in the ineffective assistance allegation unequivocally stated during her testimony that NAG is "highly untruthful." Given the limited purpose and potential impact of such testimony, had it been admitted, we are not convinced that the result would have been any different.

## CONCLUSION

The findings and the sentence are AFFIRMED.

Senior Judge ALDYKIEWICZ and Judge WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court