**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Technical Sergeant KENDALL NORMAN II**
**United States Air Force**

**ACM 37945 (recon)**

**04 September 2014**

Sentence adjudged 11 March 2011 by GCM convened at Joint Base McGuire-Dix-Lakehurst, New Jersey. Military Judge: Donald R. Eller, Jr.

Approved sentence: Bad-conduct discharge, confinement for 6 months, a fine of $10,000.00, with 4 months of contingent confinement, and reduction to E-1.

Appellate Counsel for the Appellant: Major Ja Rai A. Williams; Major Matthew T. King; and Captain Michael A. Schrama.

Appellate Counsel for the United States: Lieutenant Colonel Linell A. Letendre; Lieutenant Colonel C. Taylor Smith; Major Daniel J. Breen; and Gerald R. Bruce, Esquire.

Before

ALLRED, MITCHELL, and WEBER
Appellate Military Judges

OPINION OF THE COURT
UPON RECONSIDERATION

This opinion is subject to editorial correction before final release.

PER CURIAM:

The appellant was convicted, contrary to his pleas, by a general court-martial composed of officer members of one specification of conspiracy to commit larceny of United States property, of a value more than $500; one specification of larceny of United States Air Force property, of a value more than $500; and one specification of making a false and fraudulent claim against the United States of a value of more than

$500, in violation of Articles 81, 121, and 132, UCMJ, 10 U.S.C. §§ 881, 921, 932. The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 6 months, a fine of $10,000.00, with four months of contingent confinement, and reduction to E-1.[1]

*Procedural History*

On 25 January 2013, The Judge Advocate General of the Air Force appointed Mr. Laurence M. Soybel to the position of appellate military judge on the Air Force Court of Criminal Appeals pursuant to Article 66(a), UCMJ, 10 U.S.C. § 866(a). At the time of this appointment, Mr. Soybel, a retired Air Force officer and former appellate military judge, was serving as a civilian litigation attorney in the Department of the Air Force. On 25 June 2013, the Secretary of Defense, "[p]ursuant to [his] authority under title 5, United States Code, section 3101 *et seq*.," issued a memorandum that "appoint[ed] Mr. Laurence M. Soybel, a civilian employee of the Department of the Air Force, to serve as appellate military judge on the Air Force Court of Criminal Appeals." Memorandum from Sec'y of Def. Chuck Hagel for Sec'y of the Air Force Eric Fanning (25 June 2013).

When the appellant's case was initially before us, the appellant raised five issues, asserting: (1) the military judge abandoned his impartial role by asking questions that helped the Government meet its burden of proof; (2) the military judge erred by not instructing the members on the use of uncharged misconduct; (3) the military judge erred when he told the members that the appellant must defend against the Additional Charge and would not allow the members latitude to make exceptions and substitutions with respect to the Additional Charge; (4) his rights under Article 12, UCMJ, 10 U.S.C. § 812, were violated when he was confined in immediate association with foreign nationals; and (5) he was subjected to cruel and unusual punishment when he, a city police officer in his civilian capacity, was confined in a neighboring jail.

On 7 May 2013, we issued a decision affirming the findings and sentence. *United States v. Norman II*, ACM 37945 (A.F. Ct. Crim. App. 7 May 2013) (unpub. op.). Mr. Soybel was a member of the panel that decided the case. Following Mr. Soybel's appointment by the Secretary of Defense on 25 June 2013, we reconsidered the decision sua sponte and on 16 July 2013 issued a new opinion upon reconsideration. *United States v. Norman II*, ACM 37945 (recon) (A.F. Ct. Crim. App. 16 July 2013). Mr. Soybel was again a member of the panel. On 6 September 2013, the appellant filed a petition for grant of review with our superior court. *United States v. Norman*, 73 M.J. 44 No. 14-0011/AF (Daily Journal 6 September 2013). On 31 October 2013, our superior

---

[1] On 9 June 2011, the convening authority approved the sentence as adjudged. On 22 September 2011, the convening authority issued a supplementary court-martial order in which he remitted the portion of the sentence that required the appellant "to be further confined until said fine is paid, but for not more than 4 months in addition to the 6 months adjudged confinement."

court dismissed the appellant's petition for review without prejudice and converted the appellant's motion to vacate, then pending before this Court, into a motion for reconsideration. *United States v. Norman*, 73 M.J. 91 (C.A.A.F. 2013) (mem.). On 15 April 2014, our superior court issued its decision in *United States v. Janssen*, 73 M.J. 221, 225 (C.A.A.F. 2014), holding that the Secretary of Defense did not have the legislative authority to appoint civilian employees as appellate military judges and that his appointment of Mr. Soybel to this Court was "invalid and of no effect."

In light of *Janssen*, we granted the appellant's motion for reconsideration on 29 April 2014 and permitted the appellant to file a supplemental assignment of errors. The appellant submitted a supplemental assignment of errors asserting he is entitled to relief due to excessive post-trial processing delays. With a properly constituted panel, we have reviewed the appellant's case, to include the appellant's previous and current filings and the previous opinions issued by this Court. We affirm the findings and sentence.

*Background*

The appellant was a reservist called to active duty at Joint Base McGuire-Dix-Lakehurst, New Jersey (NJ), during the charged timeframe. He lived in or very near Philadelphia, Pennsylvania, which is deemed to be outside the commuting distance for reservists. Consequently, he was authorized to incur reimbursable lodging expenses during his active duty tour, which lasted more than one year. Initially, he stayed in a base lodging facility, the All American Inn, but was eventually authorized to move to a local Candlewood Suites in Mt. Laurel, NJ, after the base lodging became too crowded.

Airman (Amn) HA testified at the appellant's court-martial that he was also a reservist called to active duty and worked with the appellant. He testified that the appellant asked him to create a false receipt indicating the appellant had stayed at the Candlewood Suites. He offered Amn HA $500. Amn HA was staying at a Candlewood Suites in Bordentown, NJ, and used his own receipt, which displayed the Bordentown address, to create the document for the appellant. The Government also introduced evidence from the appellant's "EZ Pass" electronic toll payment account showing he made daily trips from the base to Philadelphia. This supported the theory that he never stayed at the Mt. Laurel Candlewood Suites but commuted approximately 50–60 miles every day. Thus, even though he did not stay in local authorized quarters after he was required to move out of base lodging, the appellant submitted false claims for lodging and other authorized expenses supported by the false receipts created by Amn HA.

The appellant's scheme was uncovered after Amn HA wrote an anonymous letter to the finance office stating the appellant had stolen another Airman's receipts and submitted false claims. Amn HA was motivated to do so by the appellant's failure to pay him $400 for a second set of false lodging receipts that Amn HA produced for him. Although Amn HA tried to craft the letter to steer investigators away from himself, the

Air Force Office of Special Investigations was eventually able to piece the puzzle together. Both were prosecuted.

*Partiality of Military Judge*

Mr. MC, the former manager of the Candlewood Suites in Mt. Laurel, NJ, testified as a Government witness. He stated that, although a reservation was made for the appellant, he never checked into the hotel, and the reservation was cancelled. During cross-examination, Mr. MC did, however, indicate he may have seen the appellant at the hotel:

Q [Defense Counsel]. Mr. [MC], you also testified at an Article 32 hearing in this case. It was a hearing prior—back in December?

A. Yes.

Q. And you saw [the appellant] at that time?

A. Yes I did.

Q. You actually recognized him?

A. You guys indicated to me who he was.

Q. Do you remember talking to us at your house; I think it was last week?

A. Uh-huh.

Q. And we discussed, and you mentioned recognizing [the appellant] from the hotel?

A. I remember the conversation, yes.

Q. You remember telling us that you recognized him from the hotel?

A. I may have recognized him or I may have seen him.

Q. May have seen him at the hotel?

A. Yeah I may have seen him.

After the parties' examination of Mr. MC, the military judge asked additional questions on this topic:

MJ: Notwithstanding what you may or may not have told counsel at some prior proceeding, take a look at [the appellant]. Sir, do you recall him being at your hotel or not?

WIT: No.

MJ: But you told defense counsel previously that he looked familiar, that maybe you had seen him?

WIT: I guess anyone in uniform would look kind of familiar and that could be the statement or why I actually said that.

The Government also introduced a receipt from the Mt. Laurel Candlewood Suites in the appellant's name that showed a $692 charge, and then the same amount credited back, to result in no charges to the appellant. The defense's cross-examination highlighted the fact that the bill showed that there were actually six or seven days' worth of charges made to the account with the appellant's name on it. However, later testimony showed the charges were reversed because the appellant never checked in for his reservation. The defense then asked Mr. MC whether changes could be made to the records. The military judge followed up with questions whether changes could be made to a record after a person departed. Responding to the military judge's questions, Mr. MC testified that if someone had stayed at the hotel and checked out; those records could not be deleted. Mr. MC also clarified that once a bill was closed out, it could not be changed and that in order to charge the appellant for staying at the hotel, a new bill would have to be created. Finally, he clarified that the bill showing the cancellation due to the appellant's non-arrival was the only record in the hotel's system concerning the appellant.

A military judge may ask questions of any witness. Simply doing so does not indicate the judge lacks impartiality. In fact, the military judge has "wide latitude" when asking questions pursuant to the authority in Article 46, UCMJ, 10 U.S.C. § 846, and Mil. R. Evid. 614. *See United States v. Acosta*, 49 M.J. 14, 17 (C.A.A.F. 1998). "Neither Article 46 nor Mil.R.Evid. 614 precludes a military judge from asking questions to which he may know the witness' answer; nor do they restrict him from asking questions which might adversely affect one party or another." *Id*. at 17–18.

However, when asking questions of a witness, military judges must be very careful that it does not appear they are siding with either the prosecution or defense. It is permissible to address factual gaps and other matters as long as doing so helps the members reach a decision. *See United States v. Ramos*, 42 M.J. 392, 396 (C.A.A.F. 1995). "The military judge may be an active participant in the proceedings, but 'must take care not to become an advocate for either party.'" *United States v. Merritt*,

71 M.J. 699, 706 (A.F. Ct. Crim. App. 2012) (quoting *United States v. Foster*, 64 M.J. 331, 332–33 (C.A.A.F. 2007)), *affirmed in part and overruled in part on other grounds by United States v. Merritt*, 72 M.J. 483 (C.A.A.F. 2013).

"There is a strong presumption that a military judge is impartial in the conduct of judicial proceedings." *Id.* (citing *United States* v. *Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001)). We test an appeal of a military judge's impartiality by looking at "whether, 'taken as a whole in the context of [the] trial,' a court-martial's 'legality, fairness, and impartiality' were put into doubt by the military judge's questions." *Ramos*, 42 M.J. at 396 (quoting *United States v. Reynolds*, 24 M.J. 261, 265 (C.M.A. 1987)); *see also Acosta*, 49 M.J. at 18. We apply this test from the viewpoint of the reasonable person observing the proceedings. *Id.*

When viewing this military judge's questions from the viewpoint of a reasonable person observing the proceedings, there is no doubt that the military judge maintained his impartial role. For example, during the defense's examination of Mr. MC about whether he had previously seen the appellant at his hotel, Mr. MC did not answer with a direct yes or no. An objective observer would not know whether Mr. MC was unsure if he saw the appellant at the hotel or if he was avoiding the question. The military judge's question merely clarified that Mr. MC could not recognize the appellant and did not see him at the hotel. There is nothing indicating that the judge knew what the answer to his question would be. The response could have just as easily benefitted the defense.

The same is true with the judge's questions about whether the hotel records could be changed after a reservation is closed out, and why they appeared to show the appellant was charged for six or seven days lodging. Depending upon the answer, there would have been evidence that the records could have been changed after the fact or the appellant had stayed there for at least some period. There is no indication the military judge knew what the responses to his questions would be.

The defense objected to the military judge's questions at trial and, after indicating he did not believe the judge was being impartial, trial defense counsel stated,

> It is our position that as the finder of fact that the members certainly had their ample opportunity, they could have asked and who knows if they would've or if they would not have asked, about that. And our position is you, as the judge, are not the trier of fact and are not responsible to clarify those issues. We believe that those questions potentially could close the door of an alternate explanation . . . .

From this exchange, it is obvious the defense would have preferred for certain facts to remain undeveloped in order to argue an "alternate explanation" to the members. We believe, however, the military judge responded appropriately in stating, "If I see

issues that are murky, I want some clarity so the members have the facts so that they can then make an appropriate determination."

The defense objection is essentially that, had the military judge not asked his clarifying questions, ambiguities and factual gaps would have existed, leading to possible doubt in the minds of the members. It was, however, proper for the military judge to address these matters, as long as he did not abandon his role of impartiality. Although eliminating factual ambiguities may "close a door of an alternate explanation," the military judge's role is not to protect these ambiguities to benefit either side. In this case, the judge's questions elicited answers useful to the members, and potentially beneficial to either side. The judge did not step outside his role of impartiality. We find no merit to the appellant's first assigned error.

*Instructing the Members*

The appellant claims the military judge should have instructed the members that the legitimate receipts from the All American Inn, which were submitted with the false receipts from the Candlewood Suites as part of the appellant's reimbursement claim, were not part of the false claim. The appellant argues the judge should have stated with particularity the portions of the claim that the members "needed to find false and fraudulent." Accordingly, the defense argues the members were confused.

Whether members were properly instructed is a question of law, which we review de novo. *United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002); *United States v. Smith*, 50 M.J. 451 (C.A.A.F. 1999). The military judge has a duty to instruct the "members correctly and fully on all issues raised by the evidence." *United States v. Thomas*, 11 M.J. 315, 317 (C.M.A. 1981). Because there were no objections to the instructions, we review for plain error. *See United States v. Payne*, 73 M.J. 19 (C.A.A.F. 2014). "Under a plain error analysis, this Court will grant relief in a case of nonconstitutional error only if an appellant can demonstrate that (1) there was error; (2) the error was plain and obvious; and (3) the error materially prejudiced a substantial right of the accused." *United States v. Clifton*, 71 M.J. 489, 491 (C.A.A.F. 2013) (citing *United States v. Powell*, 49 M.J. 460, 464–65 (C.A.A.F. 1998)).

Prosecution Exhibit 2 was the appellant's claim for lodging and other expenses from 9 January 2008 to the end of the fiscal year, 30 September 2008. Two hotel receipts were attached to the claim: one for a stay at the All American Inn, beginning on 9 January 2008 and ending on 26 May 2008, and the other a false receipt created by Amn HA for the appellant, allegedly from the Candlewood Suites in Bordentown, NJ, covering the period from 26 May 2008 through 30 September 2008. The appellant's stay at the All American Inn occurred just before the fraudulent period beginning on 26 May 2008 and was not part of the charged misconduct. The appellant essentially argues the members might have believed the receipts from both facilities were fraudulent rather than

those from just the latter facility.  The error, he asserts, is the judge's failure to give a limiting instruction to the members on the use of the receipt from the All American Inn.

A reading of the record indicates the prosecution never argued or suggested that the appellant's stay at the All American Inn was misconduct or part of the charged conduct.  When Prosecution Exhibit 2 was admitted into evidence, trial counsel stated on the record that they would not argue the receipt from the All American Inn was evidence of misconduct and conceded it was not part of the larceny.  It was merely admitted to show the entire story of the appellant's lodging arrangements while he was on active duty.  The defense accordingly withdrew its objection to that receipt being submitted in the claim along with the fraudulent receipt.

Questions asked by the members during their deliberations confirm they understood that the receipt from the All American Inn did not represent misconduct.  The questions were:  "If lodging on base is correct, and if lodging off base is found to be false, does that constitute the entire claim as false? . . .  Is a claim the travel voucher, accrual or individual claims, such as lodging?"  Although this raised another issue discussed below, the questions revealed the members knew the receipt for base lodging was not misconduct.  There was no argument or suggestion by the prosecution that the appellant's misconduct included his stay at the All American Inn nor was there any indication the members thought this to be so.  Indeed, the receipt merely demonstrated the point at which the appellant transitioned from submitting a legitimate claim to submitting fraudulent claims, which coincided with when he moved to off-base quarters.  This was made clear to the members.  The appellant has not demonstrated, nor have we found, any prejudice resulting from the inclusion of the receipt or from a lack of instruction regarding its use.  We are convinced the members were not confused by the judge's instructions, and the appellant was not prejudiced, even assuming error.

*The Additional Charge*

Before the members began deliberations, the military judge instructed them on the elements of making a false claim.  As part of those instructions, he told the members that they must find that, on divers occasions between on or about 9 January 2008 and on or about 12 March 2009, the accused made a certain claim against the United States, in the amount of more than $500 for lodging.  As discussed earlier, he also instructed that they must find "the entire claim was false."  In response to the member's question discussed above concerning the definition of "entire claim," the military judge re-instructed them on the elements of the offense of making a false claim and added additional instructions: "So I guess what I would point you to, words are important; phrases are important.  It's the government's charging instrument.  That is what the accused must defend against."

The military judge also instructed the members that they could make exceptions and substitutions on the findings worksheet and that he tends to not give the members "a

lot of latitude" in that regard. But, he did point out that they could find the amount was either above or below $500 or that the offense occurred on divers occasions or on one occasion. He also instructed that he would provide additional findings worksheets if they wanted to make additional adjustments. Finally, he told them to use their common sense as well as knowledge of human nature and the ways of the world in deciding whether it was the "entire claim," based on the definitions he gave them. The defense did not object to the additional instructions given to the members.

The appellant now argues that, by telling the members that the charge as written by the prosecution was what the appellant "must defend against," the members were dissuaded from making exceptions and substitutions, resulting in the outcome where they found the appellant guilty of the entire claim, including those charges from the All American Inn. This argument is a parallel to the assignment of error discussed above.

Applying the plain error standard as we did above, we find no error, and for much the same reason. The appellant is unable to point to any substantial right that may have been materially prejudiced. Further, based on the entire record, we are convinced the members were not confused. The defense invites speculation by arguing that "it is reasonable that the members concluded the entire claim may not have necessarily been false and fraudulent but since Appellant failed to properly defend against the specification as charged *and* since the members are unable to make any exceptions and substitutions to the specification, Appellant is guilty."

We find the appellant's claim that the members were unable to make any exceptions and substitutions to the specification to be an overstatement. Although the military judge said he tended to not give a lot of latitude, the members were clearly free to make exceptions and substitutions, and the judge placed no specific limits on their ability to do so. Moreover, this claim conflicts with the defense's prior argument that the members could have believed his submission of a claim for staying at the All American Inn was part of the charged misconduct. Finally, as stated previously, there is no reason to assume, and we do not believe, that the members were confused or thought the appellant's stay at the All American Inn was part of his criminal conduct or that they found him guilty of that. Accordingly, we find no error made by the military judge.

*Confinement with Foreign Nationals*

The appellant claims he is entitled to "judicial intervention" to redress 75 days of post-trial confinement with foreign nationals. After his trial, the appellant was confined at the Monmouth County Correctional Institute in New Jersey from 11 March 2011 to 26 May 2011. During almost all of that time, he was assigned to work in the "Clothing Room," where he collected clothes from and issued prison uniforms to new inmates. He also was responsible for feeding them. Some of these inmates included foreign nationals

brought in by Immigration Customs Enforcement (ICE). The appellant did this work in the presence of a corrections officer. He claims he interacted with foreign nationals every day for 75 days. At times, he also was imprisoned with foreign nationals, including his first night where, while still wearing his military uniform, he was placed in a common cell with prisoners brought in by ICE. He was threatened and challenged to fight by some of them who also insulted him on the basis of his status as a United States servicemember.

Article 12, UCMJ, states: "No member of the armed forces may be placed in confinement in immediate association with enemy prisoners or other foreign nationals not members of the armed forces." We review de novo whether an appellant's post-trial confinement violates Article 12, UCMJ. *United States v. Wise*, 64 M.J. 468, 473–74 (C.A.A.F. 2007). "A prisoner must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions." *Id*. at 469. This requirement "'promot[es] resolution of grievances at the lowest possible level [and ensures] that an adequate record has been developed [to aid appellate review].'" *Id*. at 471 (alterations in original) (quoting *United States v. Miller*, 46 M.J. 248, 250 (C.A.A.F. 1997)). "Since a prime purpose of ensuring administrative exhaustion is the prompt amelioration of a prisoner's conditions of confinement, courts have required that these complaints be made while an appellant is incarcerated." *Id*. The "[a]ppellant must show that 'absent some unusual or egregious circumstance . . . he has exhausted the prisoner-grievance system [in his detention facility] and that he has petitioned for relief under Article 138[, UCMJ, 10 U.S.C. § 938].'" *Id*. (second alteration in original) (quoting *United States v. White*, 54 M.J. 469, 472 (C.A.A.F. 2001)).

The appellant claims he was unaware of Article 12, UCMJ, or of its prohibition of confinement with foreign nationals. Likewise, he claims he was unaware of the requirement to seek administrative relief at the detention facility or that he should have promptly petitioned for relief under Article 138, UCMJ, to address any violation.

Normally a confinee's failure to complain about Article 12, UCMJ, violations administratively, either through the confinement facility's grievance system or through the military chain via Article 138, UCMJ, will preclude judicial intervention. Only some unusual or egregious circumstance will justify an appellant's failure to exhaust his administrative remedies.

Our superior court found unusual circumstances in *Wise*. After Wise's conviction, but before his confinement in a local facility near his camp in Iraq, which also housed either foreign nationals or enemy soldiers, he immediately complained of this potential Article 12, UCMJ, violation to his commander, other unit representatives, and his defense counsel, all to no avail. *Wise*, 64 M.J. at 472. Once he was placed in the facility, he was denied contact with his defense counsel. His attempts to complain to his guards were likewise met with silence. Finally, there was no evidence of a formal complaint or

grievance system he could avail himself of while he was held in Iraq awaiting reassignment to the permanent confinement facility in Kuwait. *Id.*

In *United States v. Alexander-Lee*, ACM S31784 (A.F. Ct. Crim. App. 16 March 2012) (unpub. op.), we found unusual circumstances existed when the appellant complained to his trial defense counsel that he was being bunked with foreign nationals in the local jail. By the time trial defense counsel had spoken with prison officials and gotten back to the appellant, that circumstance had ended. *Id.* Trial defense counsel had also told the appellant he would raise the matter to the convening authority and did so in the clemency submissions. The appellant did not independently raise the Article 12, UCMJ, issue administratively. *Id.*

We likewise found unusual conditions in *United States v. Brandon*, ACM 37399 (A.F. Ct. Crim. App. 22 March 2010) (unpub. op.), where the appellant, who was in a local civilian lock-up, had informed her trial defense counsel and her visiting commander of the Article 12, UCMJ, violation. While her commander told her she could not be moved back onto base because of manning issues, trial defense counsel included the issue in the member's clemency submission. The appellant did not independently raise the Article 12, UCMJ, issue administratively. *Id.*

In all of these cases where unusual or egregious circumstances were found, the appellant had raised the Article 12, UCMJ, issue with someone connected with the military who would be in the position to relay the problem to an authority capable of remedying the situation. In those cases, this communication excused the appellant's failure to formally raise the issue administratively either through the facility grievance system or under Article 138, UCMJ.

The appellant in this case acknowledges he did not exhaust his administrative remedies, even though he had the opportunity to do so. There was a facility grievance system of which he was aware, and the appellant was visited by military members, presumably from his unit. Yet, the appellant waited until appellate review before he raised the issue. He did not notify anyone in his chain of command or at the confinement facility of the Article 12, UCMJ, violation at the time it was allegedly occurring, nor did he file a grievance or make an Article 138, UCMJ, complaint. As a result, the Air Force was unable to investigate the claims, make a record of what it found, or immediately correct the situation if warranted. With these facts, we find no "unusual or egregious circumstances" to excuse the appellant's failure to pursue available administrative remedies. *See Wise*, 64 M.J. at 471. Accordingly, based on the appellant's failure to exhaust his administrative remedies and the absence of unusual or egregious circumstances, relief for his claim of a violation of Article 12, UCMJ, is not warranted.

*Cruel and Unusual Punishment*

The appellant contends that he suffered cruel and unusual punishment, based on the fact that he is a reserve Airman who, when not on active duty orders, is a "narcotics field officer" (police officer) in a city near the confinement facility he was held in for 75 days after his court-martial. He argues it was foreseeable that he would be recognized by local people he had arrested and consequently he lived under a near-constant state of threat. He states that there were rumors as to his identity, and he had to deny them when questioned by other inmates. He claims some of the inmates actually recognized him.

We review de novo whether the facts alleged constitute cruel and unusual punishment under the Eighth Amendment.[2] *United States v. Lovett*, 63 M.J. 211 (C.A.A.F. 2006). This is also true for violations alleged under Article 55, UCMJ, 10 U.S.C. § 855. The same requirement to exhaust administrative remedies through the confinement facility grievance system or through Article 138, UCMJ, exists for this type of claim, as it does for claims for violations of Article 12, UCMJ, discussed in the previous section. *See Wise*, 64 M.J. at 469. Thus, unless there are unusual or egregious circumstances explaining an appellant's failure to use these administrative avenues of redress, this Court will deny a belated request for relief at this level. *See id.*; *Miller*, 46 M.J. 248.

To prevail on this type of claim, the appellant must show: (1) prison officials committed a "sufficiently serious act or omission that denied him necessities," (2) the act or omission resulted from a culpable state of mind reflecting "deliberate indifference to [his] health and safety," and (3) he has exhausted administrative remedies. *Lovett*, 63 M.J. at 215.

As discussed previously, the appellant did not exhaust his administrative remedies. In regard to this claim, he states that he could not use the confinement facility's grievance system because grievances were collected by the prisoners themselves, which eliminated any anonymity he would have and increased his risk. However, he stated in his post-trial declaration that he was asked directly by corrections officers if he was a police officer and he denied being one. This was an opportunity to bypass the anonymity problem with the grievance system. Additionally, he was visited by military members while in confinement, and he could have alerted them to his status but did not do so. Under these conditions, we find that the appellant did not satisfy the requirement to exhaust his administrative remedies.

Furthermore, there is no evidence that either the Air Force or the confinement authority possessed the culpable state of mind reflecting deliberate indifference to his health and safety required to show an Eighth Amendment violation. The appellant denied

---

[2] U.S. CONST. amend. VIII.

to the confinement authorities that he was a police officer when asked, so there would be no basis for them to take any action. To find that the Air Force possessed a culpable mind, we would have to determine that they deliberately placed him in a confinement facility close to Philadelphia knowing he would be recognized by inmates he previously arrested. There is no proof of this and such a conclusion would require pure speculation on our part. Accordingly, we reject the appellant's Eighth Amendment violation claim.

*Appellate Review Time Standards*

We review de novo "[w]hether an appellant has been denied [his] due process right to a speedy post-trial review . . . and whether [any] constitutional error is harmless beyond a reasonable doubt." *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before this Court. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006). When a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Moreno*. *See United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011). Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005); *see also Barker*, 407 U.S. at 530.

This case was originally docketed for appellate review on 16 June 2011, and this Court rendered a decision upon reconsideration on 16 July 2013. Assuming without deciding that this entire period is considered together, this exceeded the 18-month standard established in *Moreno* and is therefore facially unreasonable. We have examined the *Barker* factors to determine whether the appellant suffered from a due process violation as a result of the delay. We find that no such due process violation occurred in the delay leading up to this Court's 16 July 2013 decision. In particular, the appellant has made no showing of prejudice under the fourth *Barker* factor. When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case to not be so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

As for the time that has elapsed since this Court's 16 July 2013 decision, we find no due process violation. The *Moreno* standards continue to apply as a case remains in the appellate process. *United States v. Mackie*, 72 M.J. 135, 135–36 (C.A.A.F. 2013). The *Moreno* standard is not violated when each period of time used for the resolution of

legal issues between this Court and our superior court is within the 18-month standard. *Id.* at 136; *see also United States v. Roach*, 69 M.J. 17, 22 (C.A.A.F. 2010). The time between our superior court's action to return the record of trial to our Court for our action and this decision has not exceeded 18 months; therefore, the *Moreno* presumption of unreasonable delay is not triggered. *See Mackie*, 72 M.J. at 136. Furthermore, the reason for the delay between 16 July 2013 and our opinion today was to allow this Court and our superior court to fully consider a constitutional issue of first impression: whether the Secretary of Defense has the authority under the Appointments Clause[3] to appoint civilian employees to the service courts of criminal appeals.

Lastly, even assuming the total appellate processing of this case raises a presumption of unreasonable delay, we again conclude the delay was harmless under the *Barker* and *Toohey* analyses.

While we find the post-trial delay was harmless, that does not end our analysis. Article 66(c), UCMJ, empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24 (C.A.A.F. 2006). In *United States v. Brown*, 62 M.J. 602, 606–07 (N.M. Ct. Crim. App. 2005), our Navy and Marine Court colleagues identified a "non-exhaustive" list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Among the non-prejudicial factors are the length and reasons for the delay; the length and complexity of the record; the offenses involved; and the evidence of bad faith or gross negligence in the post-trial process. *Id.* at 607. We find there was no bad faith or gross negligence in the post-trial processing in any stage of the appellate review of this matter. We conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ. Accordingly, the approved findings and sentence are **AFFIRMED**.



FOR THE COURT

STEVEN LUCAS
Clerk of the Court

---

[3] U.S. Const. art II § 2, cl 2.