UNITED STATES, Appellee,

v.

**Clifford J. TOLPPA, Mess Management Specialist First Class U.S. Navy, Appellant.**

No. 54,965.

NMCM 85–1729.

U.S. Court of Military Appeals.

Dec. 22, 1987.

For Appellant: *Lieutenant J. Cunyon Gordon,* JAGC, USN (argued); *Commander J. A. Williams,* JAGC, USN (on brief).

For Appellee: *Lieutenant Commander David A. Sabot,* JAGC, USN (argued); *Captain Wendell A. Kjos,* JAGC, USN (on brief); *Commander Michael P. Green,* JAGC, USN.

OPINION OF THE COURT

EVERETT, Chief Judge:

Contrary to his pleas, a general court-martial with officer members convicted appellant of committing indecent acts upon a female under age 16, assault and battery upon the same victim, and taking indecent liberties with her by exposing his private parts, in violation of Articles 134 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 928, respectively. The sentence adjudged was a bad-conduct discharge, confinement for 3 years and 6 months, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved these results; and the Court of Military Review affirmed in a lengthy unpublished opinion. The question we granted review asks:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW ERRED WHEN IT INVOKED THE DOCTRINE OF WAIVER ON APPEAL WHERE TRIAL DEFENSE COUNSEL OBJECTED TO CERTAIN TESTIMONY BUT FAILED TO PERSIST IN THE OBJECTION.

## I

The Government called as an expert witness Mrs. Elizabeth Ralston, who was Director of Social Services for the local Navy Family Service Center and who had treated several hundred child victims of sexual abuse. Mrs. Ralston had treated Deana, the child victim of the instant offenses. Moreover, some years before, Mrs. Ralston had treated the same girl for a molestation incident involving the victim's own father.

The military judge voiced his "concern" that the expert's testimony not "assume the province of the court." Expressing appropriate sensitivity to the proper scope of the expert's testimony, he emphasized, "I don't think it's proper for her to sit here and say, in her opinion, little Deana is telling the truth." After discussing with counsel the opinion in *United States v. Snipes*, 18 M.J. 172 (C.M.A.1984), the judge ruled that he would allow expert testimony as to typical behavior patterns of child victims of sexual abuse and about the credibility of child victims' versions of events but that he would not allow Mrs. Ralston to testify that she believed this particular victim.

The examination of Mrs. Ralston by counsel and by the military judge proceeded according to these guidelines. However, two of the court members proffered to her written questions about the victim's credibility. These questions inquired whether a child who "had previous experience with sexual abuse" would be "likely to make up an incident as a means of gaining attention" and whether the child's prior "abuse by her [own] father" might cause her to "make up a story to get back at the father, using another person (father) as a guide."

Both the individual military counsel and the military judge indicated that the questions as phrased seemed to do what everyone at trial had, thus far, sought not to do: To permit the expert witness to hone in on the credibility of this particular victim. Before deciding how to rephrase the questions, however, the military judge wisely decided to put the questions to the witness outside the presence of the members and see how she answered them.

This was done; and, after hearing Mrs. Ralston's answers, the military judge fashioned a two-part hypothetical question about whether "a female of five years, who was sexually assaulted by her natural father, would ... be likely in the future to make up an incident about another person committing similar acts as a means of gaining attention" or "in order to take revenge against the father, using the other individual as a surrogate for her father." The military judge asked if there were objections from counsel, and the individual military counsel responded that he had none.

Thereupon, the military judge called the court members into the courtroom and posed the hypothetical question which he had drafted. In her answers, Mrs. Ralston indicated doubt that "a child would be likely to make that up to gain attention because of the type of attention that it brings to a child"; and also she testified that it was unlikely that a child would do so for revenge because "[a] young child is unable to abstract and generalize, and to understand really the concept of revenge." The individual military defense counsel raised no objection to this testimony.

In a follow-up question on redirect, trial counsel asked Mrs. Ralston if she had treated the victim in 1981 and 1983, to which she responded in the affirmative. Thereupon, on his own motion, the military judge admonished "[t]he members ... [to] draw no inferences with regard to the hypothetical question or the fact that Mrs. Ralston may have treated the child. Those two situations are not relevant and you will not make any correlation between those facts."

On recross-examination of Mrs. Ralston, the individual military counsel asked whether "a child, as described in the hypothetical" could "make up a sexual abuse incident not solely for the purpose of gaining attention, but for some other reason." Mrs. Ralston answered that it was

very possible for a child who's been sexually abused before to report the same kind of behavior. If they were making up they would draw from their previous experience. If they report different kinds of behaviors that would be less likely to have been made up. In the experience of treating these children, they don't make up incidents that have not occurred to them.

Prior to recess that evening, another court member tendered to Mrs. Ralston a question as to whether the members could "be exposed to the opinion of an expert witness as to whether a child was telling the truth or not during an interview." The military judge not only rejected the question but also *sua sponte* instructed the members:

All right. Mr. President and members of the court, a member had a question and I'm going to read it so that all the members will understand my ruling. The member's question is "Can the court be exposed to the opinion of an expert witness as to whether a child is telling the truth or not during an interview?" Now, it may be that I haven't fully understood the question, but I have made this ruling, and I will read it to the members. In fact, it is addressed to the members. "You have heard Mrs. Ralston provide her expert opinion as to the likelihood of children of very tender years, who were purportedly abused sexually, fabricating the events of such sexual abuse. It is your responsibility to weigh and evaluate her opinion as I will later instruct you. As I have noted, it is within your purview to evaluate the credibility of all witnesses, and testimony by an expert as to an opinion of the truthfulness of [DS] would invade that province which is solely your responsibility." Accordingly, I am going to rule that question is irrelevant.

In his argument on findings, trial counsel deviated from the earlier hypothetical question posed by the military judge and intimated that Mrs. Ralston had opined that the victim could not have fabricated the

alleged incident with Tolppa. The individual military counsel objected to this argument on the ground that the expert testimony concerned a hypothetical question rather than the credibility of the victim in this case. Once again the military judge immediately responded with a corrective instruction, stating that "[t]he two hypotheticals propounded to her [Mrs. Ralston] were with regard to a child in general."

Subsequently, in his closing argument, individual military counsel sought to turn Mrs. Ralston's testimony to appellant's benefit: He suggested that this was "not a normal case" and that it might "fall under Mrs. Ralston's generalized comment about possible but not likely."

## II

In his treatment of the expert witness, the military judge demonstrated great sensitivity to the concerns that previously had been expressed in *United States v. Snipes, supra,* and later were reiterated in *United States v. Cameron,* 21 M.J. 59 (C.M.A. 1985). *See also United States v. Wagner,* 20 M.J. 758 (A.F.C.M.R.1985); *United States v. Tomlinson,* 20 M.J. 897 (A.C.M.R. 1985). He prevented the witness from commenting on the credibility of the particular child victim who had testified in court; but he allowed her to give general testimony about characteristics generally of children who have been sexually abused.

■ Although an expert should not be allowed to testify about the truthfulness of a particular child victim's report of sexual abuse, he may be allowed to testify "about a child's ability to separate truth from fantasy" or discuss "various patterns of consistency in the stories of child sexual abuse victims and compar[e] those patterns with patterns in ... [the victim's] story." *United States v. Azure,* 801 F.2d 336, 340 (8th Cir.1986).

Under Mil.R.Evid. 702, Manual for Courts-Martial, United States, 1984, the key to admissibility of expert testimony is whether it "will assist the trier of fact to understand the evidence or to determine a

fact in issue." Sex-abuse cases involving child victims are sufficiently unique that a properly qualified expert can help the trier of fact—whether a judge or court members—by explaining what has been observed about the behavior of other children subjected to similar abuse. This type of assistance may be particularly beneficial when there is some suggestion that the child may have lied about the incidents or made them up in retaliation for some family difficulty. *See United States v. Snipes, supra* at 178. As the Minnesota Supreme Court has pointed out:

> The nature ... of the sexual abuse of children places lay jurors at a disadvantage. [Such acts are] prohibited in all or almost all cultures, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse.

*State v. Myers*, 359 N.W.2d 604, 610 (Minn. 1984).

 In our view, the judge's hypothetical questions were appropriate in light of the questions submitted by the members; and the answers to those questions were unobjectionable. However, even if this had not been so, the defense waived any grounds for appeal. Not only did defense counsel fail to object to the military judge's hypothetical question, *cf.* Mil.R.Evid. 103(a)(1); *United States v. Snipes, supra*

at 179, but, in addition, counsel affirmatively stated on the record that he had no objection to the questions. *See United States v. Hall*, 348 F.2d 837, 843 (2d Cir.), *cert. denied*, 382 U.S. 947, 86 S.Ct. 408, 15 L.Ed.2d 355 (1965). In fact, the defense affirmatively used the military judge's hypotheticals as a springboard for its own questions on recross-examination of the expert, the answers to which were employed by individual military counsel in arguing in appellant's behalf. Under these circumstances, appellant has no basis for seeking relief from this Court.

In closing, we commend the military judge for assuring that the expert never expressed a personal belief that the child victim was telling the truth and preventing the court members from drawing any improper inference in this regard. Indeed, his deft handling of the trial defused many potential claims of error and demonstrated that many typical problems with expert testimony in a child-abuse case can be solved with patience, thoroughness, and intelligence.

### III

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.