# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38922**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Todd A. MILLER**
Master Sergeant (E-7), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 21 March 2017

————————————

*Military Judges:* Donald R. Eller (arraignment); Shaun S. Speranza.

*Approved sentence:* Confinement for three years and reduction to E-3. Sentence adjudged 5 June 2015 by GCM convened at Aviano Air Base, Italy.

*For Appellant:* Mr. William E. Cassara, Esquire (argued); Major Johnathan D. Legg, USAF.

*For Appellee:* Major Meredith L. Steer, USAF (argued); and Gerald R. Bruce, Esquire.

Before DUBRISKE, HARDING, and C. BROWN, *Appellate Military Judges*

Judge C. BROWN delivered the opinion of the court, in which Senior Judge DUBRISKE and Judge HARDING joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

C. BROWN, Judge:

A general court-martial consisting of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of sexual assault of

a child, two specifications of sexual abuse of a child by touching the child with an intent to gratify Appellant's sexual desires,[1] and one specification of sexual abuse of a child by communicating indecent language to the child, all in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b. Appellant was acquitted of a fifth specification of sexual abuse of a child involving the same victim. The panel members sentenced Appellant to confinement for three years and reduction to E-3. The convening authority approved the sentence as adjudged while waiving mandatory forfeitures for six months for the benefit of Appellant's dependent spouse and child pursuant to Article 58b, UCMJ, 10 U.S.C. § 858b.[2]

On appeal, Appellant raises four assignments of error: (1) the military judge erred in admitting text messages sent shortly after an alleged sexual assault as a "fresh complaint" and prior consistent statement; furthermore, the military judge abandoned his impartial role by suggesting to Government counsel that the evidence was a "fresh complaint"; (2) the member's guilty verdict to Specifications 2 and 3 of the Charge is ambiguous, precluding this court from conducting a review pursuant to Article 66(c), UCMJ, 10 U.S.C. § 866(c), because the military judge acquitted Appellant of the words "on divers occasions" in each of these specifications pursuant to Rule for Courts-Martial (R.C.M.) 917 without specifying which act or acts had not been proven to have occurred on only one occasion; (3) the military judge's reasonable doubt instruction given to the members was erroneous;[3] and (4) the evidence is factually insufficient to sustain the convictions in this case. Finding no error that prejudiced a material right of Appellant, we affirm the findings and sentence.

## I. BACKGROUND

The victim in this case, JH, was a best friend of Appellant's teenage daughter, oftentimes spending the night at Appellant's house while sleeping in the same bed as Appellant's daughter. In early October 2013, JH—who was 15 at

---

[1] In Specifications 2 and 3 of the Charge, Appellant was charged with sexual abuse of a child on divers occasions. At the close of the Government's case-in-chief, the military judge granted civilian defense counsel's motion pursuant to Rule for Courts-Martial (R.C.M.) 917 concerning these two specifications, and found Appellant not guilty of the language "on divers occasions."

[2] Appellant was also awarded one day of confinement credit for illegal pre-trial confinement.

[3] Appellant did not object to this instruction at trial. We thus summarily reject this assignment of error pursuant to *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017) (finding no plain error where a military judge provided the same instruction without defense objection).

the time—slept over at Appellant's home. Several times during the night, Appellant entered the room and rubbed JH's body; touched her breasts, vagina, and buttocks; penetrated her vagina with his finger; pulled up her shirt and bra and sucked on her breast; and whispered to her, "Do you like what I do to you? If you do, say yes. If you don't, say no." JH then went back to sleep.

Upon awakening the next day, JH told Appellant's daughter, "I had a dream, like, your dad molested me" but told her nothing further about the incidents. However, approximately 12 hours after the alleged offenses, JH texted two friends—describing in detail the sexual assault allegations.

## II. DISCUSSION

### A. Impartiality of Military Judge and Admission of Text Messages

Prior to trial, the Defense moved *in limine* to exclude JH's text messages to her friends, KYB and KAB, after the Government initially sought to introduce them as excited utterances under Military Rule of Evidence (Mil. R. Evid.) 803(2). The military judge granted the motion *in limine*, finding the text messages lacked the spontaneity required to qualify them as excited utterances, and also noting JH had time to reflect and deliberate prior to sending the messages. Despite this ruling, during the Government's case-in-chief, the senior trial counsel (STC) on direct asked, "Did you tell anyone about this?" Before JH could answer, trial defense counsel objected. During the Article 39(a) session[4] to discuss the Defense's objection, the following colloquy occurred:

> STC: Your Honor, we are not going into details. It's merely that she reported it to someone -- a friend. Not the details of the report, not the text messages, not the -- not anything other than the question, "Did you report this to anyone that morning?" It merely corroborates the fact that she reported something happening, Your Honor. . . . [T]hat's my understanding of your ruling, Your Honor, that we cannot get into text messages, the details, the -- any type of bolstering that we might be trying to do. This is merely the fact that she reported to somebody.
>
> MJ: And how is that -- under what theory is that admissible?
>
> STC: [I]t's just . . . facts and circumstances of the sexual act, that a sexual act occurred and that -- the details of the sexual act and immediately thereafter, the fact that she reported it.

---

[4] Conducted outside the presence of the members pursuant to Article 39(a), UCMJ, 10 U.S.C. § 839(a).

> MJ: When we were here in February, the only theory under which the government offered this evidence was under excited utterance and exception to hearsay, these communications. Now you're saying that this is a fresh complaint. Now we're in a different area and that's what they're offering.
>
> Is that what you understand, Defense Counsel, they are offering it now as fresh complaint? We didn't -- we didn't litigate this.
>
> CDC: I see it as the -- it's the same theory that –
>
> MJ: Well, we're not getting into the content, the matters asserted in the statements --
>
> CDC: Well, but it's --
>
> MJ: That's already been litigated.
>
> CDC: But it's inextricably linked to the matters in the conversation. I mean is -- is it the government's position --
>
> MJ: They are, but they are offering it under a different theory.

Eventually, senior trial counsel opted to withdraw the question based on "trial strategy," noting on the record that his reason was "not related to the fresh complaint doctrine." Subsequently, the military judge sustained the objection, denied a Defense motion for mistrial, and provided a curative instruction to the members. During cross-examination, civilian defense counsel questioned JH extensively about her potential biases, including the time she had to prepare her testimony, the time she had spent with prosecutors, her access to documentary evidence in the case, her ability to assess Defense strategies and direction in the case, her denial of participation in Defense interviews, and her full consultation with her special victims' counsel prior to testifying. Civilian defense counsel cited Mil R. Evid. 608(c) twice along with *United States v. Fitzpatrick*, 14 M.J. 394 (C.M.A. 1983), as a basis to overcome several objections concerning his line of cross-examination.

Civilian defense counsel later confronted JH with numerous inconsistencies between her in-court testimony and a previous sworn statement she had provided in writing to Air Force Office of Special Investigations (AFOSI) investigators, as well as her prior testimony at a preliminary hearing conducted pursuant to Article 32, UCMJ, 10 U.S.C. § 832. Civilian defense counsel further attempted to impeach JH by playing back JH's recorded Article 32 testimony for the members and by using JH's prior written statement.

Prior to re-direct, the Government asserted that the once-barred text messages were now admissible under Mil. R. Evid. 801(d)(1)(B) as a prior consistent statement. The Defense objected, countering that under *Tome v. United*

*States*, 513 U.S. 150 (1995), a prior consistent statement must be made prior to the time the improper influence or motive arose or prior to the alleged recent fabrication, and that the Government had failed to demonstrate that the proffered texts preceded the alleged motive to fabricate. Civilian defense counsel noted that they had "very cautiously steered away from any implication of an improper motive or improper influence as to the allegations in this case." He clarified the questioning was merely asserting that JH originally believed this abuse was a dream and, shortly thereafter, she inflated her memory to be reality.

The military judge overruled the Defense's objection, making detailed findings of fact and ruling the Defense had impeached JH on the basis of her character for truthfulness, evidence of bias, and prior inconsistent statements:

> Defense counsel's cross-examination established, expressed, or at the very least implied charges that JH recently fabricated her testimony or acted from a recent improper influence or motivation in her testimony. The text messages that the Government seeks to offer were made prior . . . to the evidence of bias elicited by the defense counsel, as well as made prior to the prior inconsistent statements, with which defense counsel confronted JH. Furthermore, the text messages reporting the alleged offenses were made within a reasonable time of the allegations. And JH reached out to Ms. [KYB] at a time when the alleged offenses still evoke strong emotions from her as indicated in the text messages. This report is a fresh complaint and the contents of the complaint are admissible in accordance with [Military Rule of Evidence (MRE)] 801(d)(1)(B). Furthermore the court finds the probative value of this evidence is not substantially outweighed by any danger of unfair prejudices contemplated by MRE 403.

### 1. Impartiality of military judge

Appellant now asserts, for the first time, that the military judge abandoned his impartial role when he suggested a theory of admissibility for the text messages that had not been advanced by the Government, and then admitted the text messages under that theory. We disagree.

An accused has a constitutional right to an impartial judge. *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999). A military judge "must not become an advocate for a party but must vigilantly remain impartial during the trial." *United States v. Ramos,* 42 M.J. 392, 396 (C.A.A.F. 1995). However, a military judge is not "a mere referee" but, rather, properly may participate actively in the proceedings. *United States v. Graves,* 1 M.J. 50, 53 (C.M.A. 1975). Thus, while a military judge must maintain his fulcrum position of impartiality, the

judge can and sometimes must ask questions in order to clear up uncertainties in the evidence or to develop the facts further. *United States v. Dock,* 40 M.J. 112, 127-128 (C.M.A 1994); *United States v. Tolppa,* 25 M.J. 352, 355 (C.M.A 1987); *United States v. Reynolds,* 24 M.J. 261, 264 (C.M.A. 1987).

When a military judge's impartiality is challenged on appeal, the test is "whether, taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt by the military judge's actions." *United States v. Quintanilla*, 56 M.J. 37, 78 (C.A.A.F. 2001) (quoting *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)). The test is objective, judged from the standpoint of a reasonable person observing the proceedings. *Id.* While military judges are obliged to disqualify themselves when they lack impartiality, they are equally obliged not to disqualify themselves when there is no reasonable basis for doing so. *See United States v. Kincheloe,* 14 M.J. 40, 50 n. 14 (C.M.A. 1982). Failure of the defense to challenge the impartiality of a military judge may permit an inference that the defense believed the military judge remained impartial. *United States v. Hill,* 45 M.J. 245, 249 (C.A.A.F. 1996).

Here, the exchange between the military judge and the STC was not unlike numerous exchanges found in the record where the judge was trying to understand one of the parties' positions on an issue in question—he was merely attempting to clarify the theory under which the Government was attempting to admit the text messages. We find nothing in the record to indicate that the military judge abandoned his impartial role, became an advocate for either party, or placed the court-martial's legality, fairness, and impartiality into doubt by his actions. The lack of Defense objection at trial buttresses this conclusion.

### 2. Admissibility of Text Messages as a Prior Consistent Statement

Appellant asserts the military judge erred by admitting the series of text messages as a "fresh complaint" of a sexual assault. Appellant similarly claims the text messages were inadmissible as prior consistent statements under Mil. R. Evid. 801(d)(1)(B) because the trial defense counsel had not alleged a point in time when the witness had a motive to fabricate or was subjected to an improper influence. We disagree and find that the military judge did not abuse his discretion in admitting the messages as prior consistent statements under Mil. R. Evid. 801(d)(1)(B).

A military judge's decision to admit or exclude evidence of a prior consistent statement is reviewed for abuse of discretion. *United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998). The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *United States v.*

*White*, 69 M.J. 236, 239 (C.A.A.F. 2010). An abuse of discretion occurs when the findings of fact are clearly erroneous or the conclusions of law are based on an erroneous view of the law. *United States v. Hollis*, 57 M.J. 74, 79 (C.A.A.F. 2002). As such, the findings of fact are reviewed under the clearly erroneous standard and conclusions of law are reviewed de novo. *United States v. Cote*, 72 M.J. 41, 44 (C.A.A.F. 2013). "On questions of fact, we ask whether the decision is reasonable; on questions of law, we ask whether the decision is correct." *United States v. Baldwin*, 54 M.J. 551, 553 (A.F. Ct. Crim. App. 2000) (internal quotation marks, alterations, and citation omitted), *aff'd,* 54 M.J. 464 (C.A.A.F. 2001).

Military Rule of Evidence 801(d) provides:

> A statement that meets the following conditions is not hearsay:
>
> (1)  A Declarant-Witness's Prior Statement. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> . . . .
>
> (B) is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying.

The Supreme Court, interpreting the federal analog to this rule, emphasized that prior consistent statements "may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." *Tome*, 513 U.S. at 157. Instead, to be admitted as substantive evidence, they must "predate the alleged fabrication, influence, or motive." *Id.* at 158. But where multiple motives to fabricate or multiple improper influences are asserted, the statement need not precede all such motives or inferences—only the one it is offered to rebut. *Allison*, 49 M.J. at 57.

The "fresh complaint" doctrine was previously an express provision in the 1951 and 1969 Manuals for Courts-Martial. As the CMA articulated it in 1952:

> In cases involving sexual offenses, such as rape, statutory rape, sodomy, attempts to commit such offenses, assault with intent to commit rape or sodomy, and indecent assaults, evidence that the alleged victim of such an attack made complaint within a short time is admissible. This evidence is to be restricted to proof that a complaint against the accused was made, that details of the offense related during the course of making the complaint being inadmissible under this rule. Evidence of fresh complaint is received solely for the purpose of corroborating the testimony

of the victim and not for the purpose of showing the truth of the matter stated in the complaint. However, when it is shown that the complaint was made while the victim was in such a state of shock occasioned by the attack as to give warrant to a reasonable conclusion that the complaint was not the result of reflection or design but was made spontaneously, the complaint, as well as the details of the attack related during the course of making it, may be received in evidence as tending to prove the truth of the matters stated.

*United States v. Mounts*, 2 C.M.R. 20, 28 (C.M.A. 1952).

Previously, complaints of sexual offenses had to be corroborated; one way to do that was to admit evidence of a fresh complaint. But when the requirement for corroboration was deleted from the Manual, so too was the hearsay exception for fresh complaint. *United States v. Sandoval*, 18 M.J. 55, 63 (C.M.A. 1984); *United States v. Swift*, No. 20100196, 2015 CCA LEXIS 581, *7 (A.C.C.A. 22 Dec. 2015) (unpub. op.). The concept of fresh complaint, nevertheless, has been subsumed into other hearsay exceptions—not eliminated altogether. *Sandoval*, 18 M.J. at 63.

"[A]n express hearsay exception for fresh complaint has been deleted as being unnecessary. Consequently, evidence of fresh complaint will be admissible under the Military Rule only to the extent that it is either nonhearsay, *see* Rule 801(d)(1)(B), or fits within an exception to the hearsay rule. *See* subdivisions (1), (2), (3), (4), and (24) of Rule 803." Drafter's Analysis, *Manual for Courts-Martial, United States (MCM)*, A22-41 (2016 ed.). Likewise, "Rule 801(d)(1)(B) provides a possible means to admit evidence of fresh complaint in prosecution of sexual offenses. Although limited to circumstances in which there is a charge, for example, of recent fabrication, the Rule, when applicable, would permit not only fact of fresh complaint, as is presently possible, but also the entire portion of the consistent statement." Drafter's Analysis, *MCM*, A22-61 (2016 ed.).

Before admitting the text messages as a prior consistent statement, the military judge clearly articulated his findings of fact and we find they are not clearly erroneous. He articulated his application of the law on the record and conducted a Mil. R. Evid. 403 balancing test. While the "fresh complaint" doctrine no longer exists as a separate means to admit evidence that a victim of a sexual assault made a complaint within a short period of time after an attack, the military judge correctly found an independent basis for the admissibility of the text messages: Mil. R. Evid. 801(d)(1)(B), prior consistent statements. As the military judge noted, civilian defense counsel, during cross-examination, implied government officials, including the Prosecution, investigators, and JH's special victim's counsel, extensively prepared JH for her testimony and

that JH was biased in favor of the Government. It was also suggested based on the questioning of JH that her access to documents and knowledge of Defense strategies allowed her to conform her testimony accordingly at trial to benefit the Prosecution's case. Similarly, civilian defense counsel confronted JH with allegedly inconsistent statements made to AFOSI and at the subsequent Article 32 hearing.

The text messages, made some 12 hours after the abuse, preceded the implied improper influence by government officials, the implied bias in favor of the Government, and the allegedly inconsistent statements. While at one point, the military judge seemed to be speaking to the now-defunct rule of admissibility ("The theory of admissibility of a fresh complaint is that it is natural to expect that the victim of such a crime would complain of it, and the prosecution can show the fact of complaint to forestall the assumption that none was made, and that therefore the offense did not occur."), it is nonetheless clear that he correctly applied the current rule of evidence to determine that the text messages were admissible. As such, we find no abuse of discretion.

## B. Ambiguity of Verdict for Specifications 2 and 3

Appellant asserts the military judge's finding of not guilty of the words "on divers occasions" in Specifications 2 and 3 of the Charge pursuant to Rule for Courts-Martial (R.C.M.) 917 rendered the subsequent verdict to those specifications by the members ambiguous under *United States v. Walters,* 58 M.J. 391 (C.A.A.F. 2003)*,* thereby precluding this court from conducting its review under Article 66(c), UCMJ. We disagree.

After the Government rested its case, the Defense moved for a finding of not guilty pursuant to R.C.M. 917 to the words "on divers occasions" in Specifications 2 and 3. Specifically, the Defense argued that no evidence was presented that the charged touchings occurred on more than one occasion, stating:

> [In] Specification 2, there's not been any evidence that there was an intentional touching of the vulva on more than one instance or that there was a touching of the breasts with his mouth and hands and the buttocks of with his hand. So the evidence seems to suggest that these instances happened on one instance based on the testimony. *Moreover, we would say on a global sense, based on her testimony that these sessions, quote, unquote, all run together and that she thinks of them as one large event would also eradicate the -- the notion of on divers when -- on divers as referring to separate and distinct acts.*
>
> And then as for Specification 3, there is not evidence that there was intentional touching through the clothing of the stomach, arms, and legs on more than one occasion either. It seems that

was on one -- either session one and then there was not a clarification of whether that continued or whether there was direct then contact -- contact of other portions of the body. And *additionally, the general notion of [JH's] testimony that it's all one big event in her mind should merge that and eradicate the idea of separate and distinct acts.*

(Emphasis added)

The Government agreed with the Defense's motion, and the military judge granted the motion, finding Appellant not guilty of the language "on divers occasions" in Specifications 2 and 3 of the Charge. Prior to their deliberation on findings, the military judge instructed the members that they must find Appellant not guilty of this language, and could only find Appellant guilty of the remaining language in the two specifications if the Government met its burden of establishing Appellant's guilt beyond a reasonable doubt. As neither party requested variance instructions for either of these specifications, the military judge provided the following instruction on the elements:

> In Specification 2 of the Charge, the accused is charged with the offense of sexual abuse of a child, in violation of Article 120(b), Uniform Code of Military Justice. To find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt of the following elements: One, that between on or about 1 October 2013 and on or about 15 October 2013, at or near Aviano, Italy, the accused committed lewd acts upon JH, to wit: intentionally touching the vulva of JH with his finger, the breasts of JH with his mouth and hands and the buttocks of JH with his hand with an intent to gratify his sexual desire; and two, that at the time, JH had not attained the age of 16 years . . . .

> In Specification 3 of the Charge, the accused is charged with the offense of sexual abuse of a child, in violation of Article 120(b), Uniform Code of Military Justice. To find the accused guilty of this offense, you must be convinced by legal and competent evidence beyond a reasonable doubt of the following elements: One, that between on or about 1 October 2013 and on or about 15 October 2013, at or near Aviano, Italy, the accused committed lewd acts upon JH, to wit: intentionally touching through her clothing, the stomach, arms and legs of JH with his hands with an intent to gratify his sexual desire; and two, that at the time, JH had not attained the age of 16 years.

In certain circumstances, a general verdict of guilty excepting the words "on divers occasions" can create an ambiguity making it impossible for a service Court of Criminal Appeals (CCA) to fulfill its responsibility to review the conviction for factual sufficiency. The CCA's power of review for factual sufficiency is subject to a critical limitation: a CCA "cannot find as fact any allegation in a specification for which the fact-finder below has found the accused not guilty." *United States v. Walters*, 58 M.J. 391, 395 (C.A.A.F. 2003). When the phrase "on divers occasions" is removed from a specification, the effect is "that the accused has been found guilty of misconduct on a single occasion and not guilty of the remaining occasions." *United States v. Augspurger,* 61 M.J. 189, 190 (C.A.A.F. 2005). Thus, "*if there is no indication on the record which of the alleged incidents forms the basis of the conviction*," then the findings of guilty are ambiguous and the CCA cannot perform a factual sufficiency review. *United States. v. Wilson*, 67 M.J. 423 (C.A.A.F. 2009) (citing *Walters,* 58 M.J. at 396-97) (emphasis added).

This rule applies "only in those narrow circumstance[s] involving the conversion of a 'divers occasions' specification to a 'one occasion' specification through exceptions and substitutions by the members." *United States v. Brown,* 65 M.J. 356, 358 (C.A.A.F. 2007) (quoting *Walters*, 58 M.J. at 396). An unadulterated, unobjected-to, general verdict implicitly contains a verdict of guilt as to each underlying act. *United States v. Roderiquez*, 66 M.J. 201, 205 (C.A.A.F 2008). "With minor exceptions for capital cases, a 'court-martial panel, like a civilian jury, returns a general verdict and does not specify how the law applies to the facts, nor does the panel otherwise explain the reasons for its decision to convict or acquit.'" *Brown*, 65 M.J. at 359 (quoting *United States v. Hardy,* 46 M.J. 67, 73 (C.A.A.F. 1997)). "In returning such a general verdict, a court-martial panel resolves the issue presented to it: did the accused commit the offense charged, or a valid lesser included offense, beyond a reasonable doubt?" *Id.* at 359 (citing *Griffin v. United States,* 502 U.S. 46, 49-51 (1991)).

While a finding of guilty excepting the words "on divers occasions" certainly *can* frustrate a CCA's ability to analyze the evidence for factual sufficiency, there is no such ambiguity here. An ambiguity only arises when the record does not indicate which of the incidents forms the basis of the conviction. *United States v. Ross*, 68 M.J. 415, 417 (C.A.A.F. 2010). As the Defense itself articulated in its R.C.M. 917 motion challenging the legal sufficiency of the evidence of divers occasions—and as the Government conceded—the evidence only supported *one* consolidated incident for each of the specifications. Applying the

standard[5] for a motion for a finding of not guilty under R.C.M. 917, the military judge found evidence of divers occasions legally insufficient and entered findings of not guilty as to those words for Specifications 2 and 3 of the Charge. Although by a different legal mechanism, the net result of the Defense motion, Government concession, and military judge's findings of not guilty resembled minor changes to the specifications after arraignment. The members were instructed on specifications each alleging a single occasion just as would have been the case had the words "on divers occasions" been deleted from the specifications.

Unlike *Walters*—where the members found the accused had committed only one of potentially six occurrences of drug use and thus found him guilty by excepting the words "on divers occasions" and substituting the words on "one occasion," but did not indicate on the record to which occasion they were convicting the accused—here, the military judge granted an R.C.M. 917 motion finding Appellant not guilty of the words "on divers occasions" before the case went to the members. This left the members to deliberate on two single specifications of sexual abuse allegedly committed when Appellant touched JH on various parts of her body with an intent to gratify his sexual desires. We need not guess "which" incident was excluded by the finding of not guilty: the military judge, prompted by the Defense and for its benefit—found that the activities throughout the evening merged into one event per each specification. In other words, as a matter of law, the acts within the two specifications each occurred during one single course of conduct. The record is entirely clear as to which conduct served as the basis for the members' findings of guilt for Specifications 2 and 3 and we find no ambiguity preventing this court from conducting its review under Article 66, UCMJ.

## C. Factual Sufficiency of Evidence

We review issues of factual sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000); *United States v.*

---

[5] A motion for a finding of not guilty shall be granted only in the absence of some evidence which, together with all reasonable inferences and applicable presumptions, could reasonably tend to establish every essential element of an offense charged. The evidence shall be viewed in the light most favorable to the prosecution without an evaluation of the credibility of the witnesses. R.C.M. 917(d).

*Turner*, 25 M.J. 324, 325 (C.M.A. 1987). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

Specification 1 of the Charge alleged Appellant committed sexual assault of a child, in violation of Article 120b, UCMJ. To sustain a conviction for this offense the Prosecution was required to prove: (1) that Appellant penetrated the vulva of JH with his finger with an intent to gratify his sexual desire; and (2) that at the time, JH had attained the age of 12 years, but had not attained the age of 16 years.

Specifications 2 and 3 the Charge alleged Appellant committed sexual abuse of a child in violation of Article 120b, UCMJ. The elements for these offenses were previously discussed in Section B above.

Specification 4 of the Charge alleged Appellant committed sexual abuse of a child, in violation of Article 120b, UCMJ. To sustain a conviction for this offense, the Prosecution was required to prove: (1) Appellant committed a lewd act upon JH, to wit: intentionally communicating to JH indecent language, to wit: "Do you like what I do to you? If you do, then say yes; if you don't, say no," or words to that effect, with an intent to gratify his sexual desire; and (2) that at the time, JH had not attained the age of 16 years.

The military judge instructed the members, "Indecent language is that which is grossly offensive to the community's sense of modesty, decency or propriety or shocks the moral sense of the community because of its vulgar, filthy or disgusting nature. . . . Seemingly chaste or innocuous language can constitute this offense, if the context in which it is used sends an indecent message, as reasonably interpreted by commonly accepted community standards."

The bulk of the evidence supporting the convictions came from the testimony of JH, who testified that she regularly spent the night at Appellant's house because she was best friends with his daughter. On the night in questions, JH testified she awoke to someone rubbing her body on her torso, arms and legs. The individual would touch her and then leave the room and come back and touch her again. The person later pulled down her pants and felt her "butt." The person then left, and later returned placing his hands inside her pants and underwear feeling around her vagina with his fingers, penetrating her past the "lips" of her vagina. Although initially unable to identify her assailant, she ultimately determined it was Appellant when he placed her hands on his head and she could tell it was Appellant's hair.

Appellant later returned to pull up JH's shirt and bra and place his mouth on JH's breast. As Appellant was kissing JH's breast, she felt his braces on her

skin, again confirming his identity. Appellant then whispered to JH, "Do you like what I do? If you like what I do to you, say yes, if you don't, say no." The following morning, JH told DM that she had a dream that DM's father molested her and DM replied, "That's weird." JH wanted to see DM's reaction and find out if she knew what happened. JH's text messages later that day admitted as a prior consistent statement, however, gave a detailed accounting of the how Appellant touched JH consistent with her in-court testimony. In addition to JH's testimony, the Government admitted Appellant's dental records showing he wore braces at the time of the incident.

Appellants asserts, as he did at trial, that JH was dreaming and had not actually been assaulted by Appellant; that JH is not a credible witness; and that the Government presented no evidence that Appellant, who testified at trial, is not credible. Appellant questions JH's identification of him as her attacker as she never saw his face. Finally, Appellant asserts he had an alibi, based upon evidence of his wife's praying habits as a devout Muslim and his travel to the United States after his brother's death. Civilian defense counsel confronted JH with numerous inconsistent statements in terms of the details of the alleged sexual contact. The Defense also called into question the timing of her report, highlighting her confusion as to what day the alleged incident occurred. Appellant's flight itinerary from a trip to the United States after the death of his brother was also admitted to challenge JH's timeline.

Civilian defense counsel elicited that JH was a vivid dreamer, had in the past dreamed about Appellant, and also previously had a sexualized dream concerning a teacher. On cross-examination, JH admitted at times she had a troubled relationship with her mother, missed her father and friends back in the United States, and had engaged in attention-seeking behavior such as cutting herself. The Defense also presented evidence that Appellant's wife often prayed in DM's room in the early morning. Appellant testified that he did not remember JH staying over his house at the time of the incident, that at the time of the alleged incident he was very distraught over his brother's recent death, and that he had never touched JH in any manner.

While cases such as these can be very difficult for the fact-finder, JH's testimony met all of the elements in each specification. She detailed where Appellant touched her and how she knew it was him. The location of the touching and JH's age demonstrate that the touching was of a child and done to gratify Appellant's sexual desire. With regards to the indecent language in Specification 4, while the language "Do you like what I do to you, if you do say yes, if you don't, say no," might be innocuous under other circumstances, it is not when communicated by an adult to a 15-year old girl as he sexually abuses her.

Having reviewed the entire record of trial and making allowances for not personally observing the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court